**CROSS MARINE, INC., Appellant,**

v.

**Lewis Reagan LEE, Appellee.**

**No. 13–94–391–CV.**

Court of Appeals of Texas,
Corpus Christi.

July 13, 1995.

Joseph S. Jaworski, Griggs & Harrison, F. William Mahley, Houston, for appellant.

Michael G. Terry, Edwards & Terry, William R. Edwards, III, Edwards, Terry, Baiamonte & Edwards, Corpus Christi, for appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

YAÑEZ, Justice.

This is a personal injury case. Lewis Reagan Lee sued Cross Marine, Inc., for personal injuries he received when he fell from a personnel basket into the Gulf of Mexico. Cross Marine stipulated liability, and the parties tried the case to a jury only on the issue of damages. The jury returned a verdict favorable to Lee for $150,000 in actual damages, and the trial court awarded him $54,300 in prejudgment interest. By a single point of error, Cross Marine argues that the trial court erred by awarding prejudgment interest on Lee's damages. We affirm.

In July 1989, Bill Johnson Construction was installing a gas compressor on the Matagorda 520 platform. The platform stood eight to ten miles offshore from the jetties outside of Port O'Connor, Texas. While Johnson's workers installed the compressor, they stayed and ate their meals on a "lift boat" called the Southern Cross 5, a vessel owned by Cross Marine, Inc. The Southern Cross 5 was "jacked up on legs" so that it stood at the same level as the platform. Lewis Reagan Lee worked for Johnson as a structural welder on the Matagorda 520 platform. After he had finished his welding job, Johnson was going to send him to shore. Lee and two other men got into a personnel basket that would transfer them from the Southern Cross 5 to a crew boat. The crew boat was going to return him to shore. They got into the basket, and a crane lifted it off the deck of the Southern Cross 5. When the basket was 35 to 40 feet over the sea, a cable broke, and the men fell into the water. Lee testified that to the best of his knowledge, he was hanging onto a rope webbing, and when

he hit the water, he spun to his right. He surfaced and grabbed a line thrown from the crew boat. He tried to "catwalk" up the side of the crew boat, but he could not move his legs. The crew had to pull him into the boat. After all three men were aboard the crew boat, it returned them to shore. An ambulance took Lee to a hospital in Port Lavaca. He received x-rays, and a doctor allowed him to go home that day. However, three days later, both of his legs buckled, and he fell. He went to Spohn Hospital and stayed there 21 days. While at Spohn, he received physical therapy. He continued therapy after leaving Spohn. During trial, he said that his right leg was weak and did not move properly. He also said that he had headaches everyday, a muscle spasm in the back of his neck, and weakness in his hands.

Lee sued Cross Marine under the theory of strict products liability. He asserted that Cross Marine was negligent for using the personnel basket with a rusted and corroded cable to transport passengers and that this negligence was a proximate cause of the incident. He alleged that he had sustained in the past, and would sustain in the future, physical pain and suffering, mental anguish, loss of physical capacity, and loss of wage-earning capacity. He sought actual damages, exemplary damages, attorneys' fees, prejudgment interest, post-judgment interest, and court costs.

Cross Marine's answer to the suit included a general denial to all of Lee's allegations. It pleaded the affirmative defenses of 1) the incident was an unavoidable accident, 2) Lee failed to mitigate damages, 3) that Lee's negligent acts, omissions, or both caused his injuries and damages, if any, and 4) that a third party's negligent acts, omissions, or both caused Lee's injuries and damages, if any. Cross Marine's answer also included special exceptions.[1] It asserted that Lee's exclusive remedy existed under the Longshoremen's & Harbor Workers' Compensation Act. Alternatively, it asserted that Lee's remedy existed under the general maritime law.

Cross Marine states in its appellate brief that at trial it "stipulated that it was liable for causing the vessel's personnel basket to plunge into the Gulf of Mexico, and the lawsuit proceeded before the jury to determine the question of damages, if any, recoverable by Mr. Lee." It does not seek a retrial of this case, and, therefore, does not appeal the jury's award of $150,000 in actual damages. It only appeals the final judgment to the extent that it awarded Lee $54,300 in prejudgment interest.

By its sole point of error, Cross Marine asserts that the trial court erred by awarding Lee $54,300 in prejudgment interest.

Cross Marine's contention is that maritime law requires a trial court to award prejudgment interest only for past damages and that it specifically forbids a prejudgment interest award based on future damages. Since Lee did not seek and obtain an itemized verdict; *i.e.,* one that showed how much money the jury had awarded for past and future damages, the trial court had no means to determine what part of the $150,000 verdict compensated him for past and future losses. As a result, the trial court's award of prejudgment interest on the entire verdict was based, in some part, on future loss, which maritime law does not allow.

Cross Marine argues that it and Lee invoked general maritime law. Though we believe that this case potentially falls within general maritime principles, *see e.g., Sisson v. Ruby,* 497 U.S. 358, 362–68, 110 S.Ct. 2892, 2896–98, 111 L.Ed.2d 292 (1990); *Texaco Ref. & Mktg., Inc. v. Estate of Dau Van Tran,* 808 S.W.2d 61, 64 (Tex.1991), our analysis focuses on whether Cross Marine apprised the trial court at the charge conference that the court had to itemize past and future damages for the reason that maritime law did not allow prejudgment interest on future damages. In *General Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 919–20 (Tex.1993), the issue before the court was whether maritime law, although properly invoked, can be waived. The court concluded that it can. The court said that under the facts of *De La*

---

1. The trial court did not hold a hearing on these special exceptions, and Cross Marine did not obtain a ruling on them.

*Lastra,* "General Chemical waived the application of maritime law by failing to object to evidence and jury questions regarding damages which are not recoverable under maritime law." *De La Lastra,* 852 S.W.2d at 920.

At the charge conference, Cross Marine made the following relevant objections to the proposed charge:

> As to the element of damages to be considered by the jury, we object to the inclusion of pain and mental anguish both past and future, and loss of physical capacity both past and future as those are not elements of pecuniary loss. In that regard we have cited *Dow v. Texaco* and *Miles v. Apex* [2] among others. Finally, as to physical capacity, we further object on the basis that we—as to physical capacity, we further object on the basis that we see no difference and have been pointed to none between loss of physical capacity on the one hand and lost wages, physical pain and mental anguish on the other. We have cited *Dugas v. Kansas City Southern Railway.* As to the loss of past wages, we believe Category C on the charge should read loss of wages in the past, rather than loss of earning capacity in the past....

The trial court wrote "Refused" on Cross Marine's proposed charge.

Special Question No. 1 of the court's charge asked the jury:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Lewis Reagan Lee for his injuries resulting from the occurrence in question?

> You are to consider each element of damage separately so as not to include damages for one element in any other element.

> You shall consider the following elements of damage and none other:

> (A) Physical pain and mental anguish in the past;

> (B) Physical pain and mental anguish in the future;

> (C) Loss of earning capacity in the past;

> (D) Loss of physical capacity, other than the capacity to work and earn money, in the past;

> (E) Loss of physical capacity, other than the capacity to work and earn money, in the future;

> (F) Reasonable and necessary medical expenses that Lewis Reagan Lee has incurred in the past; and

> (G) Reasonable and necessary medical expenses that he will probably incur in the future.

Answer in dollars and cents.

ANSWER: *$150,000.00*

▮ Cross Marine's objections and its proposed charge did not apprise the trial court that it had to itemize past and future damages for the reason that maritime law did not allow prejudgment interest on future damages. Cross Marine's proposed charge also failed to segregate past and future damages. In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion, state the specific grounds therefore, and obtain a ruling. Tex.R.App.P. 52(a); *Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991) (per curiam). The reason for requiring a timely request or objection is threefold: 1) fairness to all parties requires a litigant to advance complaints at a time when there is an opportunity to respond or cure them; 2) reversing a case for error not raised in a timely fashion permits the losing party to second guess its tactical decisions after they do not produce the desired result; and 3) judicial economy requires that issues be raised first in the trial court in order to spare the parties and the public the expense of a potentially unnecessary appeal. *Beall v. Ditmore,* 867 S.W.2d 791, 794 (Tex.App.—El Paso 1993, writ denied); *see also Lewis v.*

---

**2.** In *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), a seaman died aboard a ship docked in Vancouver, Washington. His mother sued Apex, one of the vessel's operators, alleging negligence under the Jones Act and breach of the warranty of seaworthiness under general maritime law. The Su-

preme Court held that there is a general maritime cause of action for the wrongful death of a seaman, but that damages recoverable in that type of action did not include loss of society. It also held that a general maritime survival action could not include recovery for decedent's lost future earnings.

*Texas Employers' Ins. Ass'n,* 151 Tex. 95, 246 S.W.2d 599, 601 (1952) (party cannot wait until entry of judgment to complain of incomplete jury verdict; rather, party must object to incomplete verdict before jury dismissed so court can cure error, if any).

In the instant case, Cross Marine did not timely present its complaint to the trial court at the charge conference and receive a ruling thereon. Cross Marine raised the issue in its response to Lee's motion for entry of judgment. However, it could not lay behind the log and present this complaint in its response to Lee's motion for entry of judgment. We hold that the trial court did not err by awarding Lee prejudgment interest on the $150,000 verdict.

We AFFIRM the trial court's judgment.