**CHAPPELL HILL BANK, Appellant,**

v.

**LANE BANK EQUIPMENT
CO., Appellee.**

No. 06–99–00137–CV.

Court of Appeals of Texas,
Texarkana.

Submitted July 10, 2000.

Decided Jan. 25, 2001.

**240**

C. Charles Dippel, George M. Bishop, Houston, for appellant.

Charles R. Kaufmann, Law Offices of Charles R. Kaufmann, PC, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Chappell Hill Bank (the Bank) appeals the judgment of the district court in favor of Lane Bank Equipment Company (Lane Equipment), in the amount of $6,743.55; attorney's fees of $9,000; additional attorney's fees in the amount of $2,500 if an appeal is taken to the court of appeals; additional attorney's fees in the amount of $1,500 if an appeal is sought from the court of appeals to the Texas Supreme Court; prejudgment interest in the amount of six percent per annum from April 5, 1998 until entry of judgment; and post-judgment interest at the maximum legal rate allowed by law.

The dispute leading to this lawsuit involved the construction of a small building just off U.S. Highway 290 in Washington County, which was to house an ATM for the Bank. Evidence presented at this jury trial showed the following.

The Bank was a small business and, until this time, never had an ATM. John Scott, a salesman for Lane Equipment, persuaded Edward Smith, president of the Bank, to use Lane Equipment to construct the building and install and service the ATM. The Bank, through Smith, entered into an agreement with Lane Equipment for a "COMPLETE JOB COST OF A BUILDING, ATM, SERVICE CONTRACT, AWNING, SIGNAGE, ARCHITECTURAL FEES, SIGHT [sic] WORK AND ELECTRICAL ETC." Initially, the electrical connection work was not to be done by Lane Equipment, but it later orally agreed to do this also. The total amount of the contract was $37,905, to be paid fifty percent down, twenty-five percent upon delivery and set-up, and twenty-five percent upon completion. The agreement dated November 13, 1996, was signed by both parties.

Although Smith testified that he had presumed that the security system for the ATM was included in the contract price, he later was given a proposal by Lane Equipment to install a security system at the facility. Lane Equipment's witness testified that while almost all ATM facilities have security systems and Lane Equipment was certainly capable of installing them, they are not included in the basic ATM price because some parties wish to contract for security from a different source.

Lane Equipment sent a proposal to the Bank setting forth the price of the alarm system and camera system. On May 12, 1997, Smith responded on behalf of the Bank by countering the offer in writing at the bottom of the offer sheet, "$200.00 per month for at least 24 months pays for all the above." This notation was initialed by Smith. Lane Equipment installed the security system, and the Bank began using the system. The Bank later removed the system, put it in a box, and, at a pretrial deposition, invited Lane Equipment to come and pick up the security system.

The testimony presented at trial shows that the Bank and Lane Equipment had a business relationship separate and apart from the ATM building agreement. Evidence shows that certain equipment was purchased by the Bank from Lane Equipment and that one piece of equipment was sent by the Bank to Lane Equipment for

repairs. The evidence also showed that the canopy over the ATM building was damaged, on several occasions, at least once by a U–Haul truck. Lane Equipment repaired the canopy twice and testified that the Bank did not pay for the last repair.

As construction of the ATM building approached completion, the Bank, through Smith, began to voice dissatisfaction with the outcome of the project. The major areas of concern were expressed by Smith in a letter addressed to Herb Pike, a Lane Equipment employee, dated September 9, 1997. The letter, and testimony at trial, indicate there were two major areas of concern: the proper painting of the door to the ATM building, and the problem of insects getting into the building, in view of its isolated and rural location. In Smith's letter, he identifies reasons for the insect problem, including the fact that light from the inside of the building is shining through to the outside and attracting them (Smith does acknowledge that the building could not be "hermetically sealed"), and the presence of an approximately one-inch gap between the interior wall and the floor, which exposes the outer wall, and the entry of insects through the air-conditioning drain.

J.C. Vaughn, president of Lane Equipment, and Herb Pike testified they made every effort to alleviate Smith's concerns by repainting the door twice and by attempting to stop insects from coming in by sealing off portions of the building with duct tape. They testified that they never refused to attempt to deal with Smith's stated concerns, but they felt that Smith was never satisfied and, in their opinion, would never be satisfied with their efforts. Eventually, the Bank stopped paying on the construction contract and this, along with the refusal of the Bank to pay on the lease of the security agreement, led to Lane Equipment filing a lien against the property on which the ATM building was located. Vaughn testified that he had completed the building as much as he could have done.

Regarding the amount of the payments, Lane Equipment charged sales tax on the payments and, in the payments that were made by the Bank, it paid, without objection or question, invoices which clearly included sales tax without objection or question. Part of the amount alleged by Vaughn to be due and owing by the Bank to Lane Equipment was an amount of sales tax, testified to be $396. In addition, the testimony was basically undisputed that the security system was in fact installed by Lane Equipment and used by the Bank for a period of time, but with the Bank making no payments to Lane Equipment. The witnesses also testified that the awning on the building was damaged on several occasions, and that Lane Equipment repaired the awning at least twice, but was paid for its services only once.

Vaughn testified that Lane Equipment was requesting payment of $1,385 for one awning; $4,800 for the security system; sales tax of $396; and $5,303.02 the balance due on the construction contract. Because Lane Equipment and the Bank had engaged in other transactions during the time period in which the ATM building was being constructed, there was conflicting testimony regarding some payments admittedly made by the Bank to Lane Equipment, and whether or not they should be credited to the ATM building project.

The Bank raises six points on appeal contending 1) that Lane Equipment was not entitled, as a matter of law, to more than seventy-five percent of the contract price of $37,905 for construction of the ATM building when the building was not completed; 2) that the contractor was not entitled to charge sales tax on the construction of the ATM building when the contract called for a complete turn-key job for the set price of $37,905; 3) that the trial court erred in rendering judgment in favor of Lane Equipment for $1,943.35 for breach of the construction contract when

the Bank had no obligation under the contract other than to pay in accordance with its terms, and the Bank had paid more than what was owed; 4) that the trial court erred in rendering judgment on the verdict for the full amount found by the jury on the lease of a security system for $4,800 when the jury also found that the Bank was owed $3,485 and had returned the security system; 5) that the Bank could not be liable for the lease of a security system when no written lease was admitted into evidence and there was no evidence that the Bank had breached any lease; and 6) that the trial court erred in not awarding the Bank judgment for $7,867.90 in overpayments plus stipulated attorney's fees based on the undisputed evidence that it had overpaid the construction contract sued upon.

## Issue No. 1

The first issue on appeal raised by the Bank contends that, under the undisputed terms of the contract, the final twenty-five percent payment owed by the Bank to Lane Equipment was payable only on completion of the contract performance by Lane Equipment. The Bank argues that the evidence was *undisputed* that Lane Equipment did not fulfill its obligations under the contract to complete the ATM building and that, as a matter of law, Lane Equipment was not entitled to receive the last payment of twenty-five percent of the total contract price of $37,905. The Bank further contends that, because it was undisputed that Lane Equipment had already received more than seventy-five percent of the total contract price, it was entitled to no further recovery.

### Was Error Properly Preserved

Lane Equipment challenges this issue (and others) raised by the Bank as not being properly preserved for appellate review.

Specifically with regard to the issue of completion or noncompletion, the trial court submitted the following question to the jury: "Do you find from a preponderance of the evidence that Lane Bank Equipment Company fully complied with all terms and conditions of the contract in doing the work?" The jury answered "Yes."

The evidence in this case suggests that it would have been better submitted on the basis of substantial performance. In the case of building and construction contracts, the doctrine of substantial performance by a contractor is frequently deemed sufficient to enable the contractor to recover the contract price, less the amount reasonably necessary to remedy any defects or omissions in his work. Not given this alternative, the jury found full compliance, but did not have an opportunity to provide any deductions for defects or omissions. Substantial compliance with the requirements of a contract is the legal equivalent of full compliance. *Del Monte Corp. v. Martin,* 574 S.W.2d 597, 599 (Tex.App.—San Antonio 1978, no writ).

No objection by the Bank to this jury question appears in the record on the ground that the evidence produced at trial establishes the contrary as a matter of law. Although such an objection is one means of preserving such a claim of error on appeal, it is not required that such objection be made. 4 McDonald, Texas Civil Practice § 22.50 (1992). The Bank did file a Motion for Judgment Non Obstante Veredicto in which it was alleged:

Defendant Chappell Hill Bank is entitled to Judgment as a matter of law because the contract of November 13, 1996, provided that the last twenty-five percent of the amount due under the contract was not payable until completion. It was uncontroverted that the ATM building had not been completed as of the time this case went to trial. Therefore, Plaintiff is not even entitled to more than seventy-five percent of $37,905.

A motion for judgment n.o.v. is appropriate where either 1) the jury verdict has no evidentiary support or 2) the court can determine as a matter of law that a claim or defense included in the jury charge is or is not viable. *See* 6 McDONALD & CARLSON, TEXAS CIVIL PRACTICE § 47.13 (2d ed.1998). The granting or denial of a judgment n.o.v. preserves error regarding the legal sufficiency of the evidence. *See* 6 McDONALD & CARLSON, TEXAS CIVIL PRACTICE § 44.1 (2d ed. 1998 & Supp.2000), § 47.13.

### Standard of Review Legal Sufficiency

In determining whether there is no evidence of probative force to support a jury's finding, all the evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). The appellate court will sustain a legal sufficiency challenge when the record discloses 1) a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a scintilla; or 4) the evidence conclusively established the opposite of the vital fact. *See* 6 McDONALD & CARLSON, TEXAS CIVIL PRACTICE § 44.9 (2d ed.1998) (citing *Merrell Dow*, 953 S.W.2d at 711).

### Legal Sufficiency

Lane Equipment was obligated under the contract with the Bank to complete all work in a "workmanlike manner." Generally, the concept of good workmanship has a relative meaning, depending on the context in which it is used. Otherwise, parties might be bound to obligations impossible to discharge and which were never intended to be undertaken. *Sands Motel v. Hargrave*, 358 S.W.2d 670, 673 (Tex. Civ.App.—Texarkana 1962, writ ref'd

n.r.e.). Under the standard of review of legal sufficiency, we must determine whether there was more than a scintilla of evidence that Lane Equipment completed the work on the ATM building in a workmanlike manner, or if the evidence conclusively established the opposite, that is, Lane Equipment had not completed the construction in a workmanlike manner.

J.C. Vaughn, president of Lane Equipment, testifying in response to the question as to whether Lane Equipment had completed construction of the building, responded: "Complete as we were allowed to come to terms." He went on to testify that there were certain items he was not permitted to complete because Smith, the Bank president, was never satisfied with Lane Equipment's efforts. Herbert Pike testified that Smith's demands regarding "completion" of the ATM building were never ending, and despite Lane Equipment's best efforts, it was never able to completely satisfy Smith's requests. Kenneth Parker, who had submitted a bid to the Bank to work on the ATM building, testified to the contrary, i.e., that the building was not complete. Both sides testified about the problem of insects getting inside the ATM building due to its rural location. Lane Equipment's witnesses testified that their attempt to seal the building using duct tape was the best that could have been done. The Bank's witnesses testified that this was not satisfactory.

Reviewing the evidence in the light most favorable to the verdict, we find that there is evidence to support the jury's finding, as it was instructed by the trial court. As to the Bank's expressed dissatisfaction with the ATM building, although there is no contractual provision in this agreement requiring work to be completed to the owner's satisfaction, we note that, generally, when such satisfaction is required in construction contracts, the courts apply an *objective* test to determine whether the "party required to be satisfied" acted in good faith. *Black Lake Pipe Line*

*Co. v. Union Const. Co.,* 538 S.W.2d 80, 88–89 (Tex.1976), *overruled on other grounds, Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Cranetex, Inc. v. Precision Crane & Rigging of Houston, Inc.,* 760 S.W.2d 298, 302 (Tex.App.—Texarkana 1988, writ denied).

A party suing upon a completed building or construction contract may recover upon proof of only substantial performance of the contract. *Dietz Mem'l Co. v. Texas Steel Bldg. Co.,* 578 S.W.2d 872, 874 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). The court also held in the *Dietz Mem'l Co.* case that in a contract dispute it is not necessary to specifically allege substantial performance.

The Bank also contends that there was an absence of evidence on the answer to whether Lane Equipment complied with the terms of the contract because there was no expert testimony. The record contains a picture of the building that was constructed, testimony about the construction, and the conclusion by the building contractor that construction was "Complete as we were allowed to come to terms." There is no dispute in the record that the building was built. The only dispute revolved around certain items with which the Bank was not satisfied.

After reviewing the evidence in the light most favorable to the verdict in accordance with the standard for legal sufficiency and indulging every reasonable inference deducible from the evidence in favor of the prevailing party, we find that the jury could properly find that Lane Equipment had "fully complied with all terms and conditions of the contract in doing the work...." The evidence certainly did not establish the opposite of this vital fact.

This point is overruled.

### Issue No. 2

In its second issue, the Bank contends this Court should determine whether under the contract Lane Equipment was entitled to charge a sales tax on the construction of the ATM building. Lane Equipment argues: 1) that the issue was not properly preserved and 2) that it properly charged sales tax. Both parties cite *Firestone Tire & Rubber Co. v. Bullock,* 573 S.W.2d 498 (Tex.1978), in support of their positions on taxability.

### *Was Error Properly Preserved*

The Bank is correct that the amount of sales tax to be collected is a matter of law. However, no question was asked of the jury concerning the recovery of taxes. The only testimony relating to taxes was that Lane Equipment had added taxes to its statement seeking $396 in sales tax. If such taxes were paid, the Bank did not seek to recover them and no issue was submitted on their recovery. Jury question number 4 asks what sum of monies are due Lane from the Bank for the construction contract and the alarm and closed-circuit television security system. The contract was in evidence before the jury and specifically states that no state or local tax has been included. Therefore, the jury was not asked to find any damages related to taxes, but only asked to find the money owed under the terms of the construction contract.

The contract on the alarm and ATM systems was also in evidence, and the question was asked about money owed under the terms of that contract. This contract did not include taxes. Therefore, even if Lane Equipment may have sought recovery for taxes, no issue was submitted to the jury under which the jury was asked to make a finding on damages for such taxes. There is no showing that the jury considered or added taxes. The record shows that Vaughn testified that Lane Equipment was seeking over $11,000 from the Bank; the jury award was $6,743.35.

The Bank's Motion for Judgment N.O.V. does not inform the trial court of the precise impact the inclusion or exclusion of sales tax had on the amount of damages awarded.

If resolution of a factual issue is required to establish a theory of recovery or defense, the failure to request a jury instruction on that issue waives the claim on appeal. *Brown v. Bank of Galveston Nat'l Ass'n,* 963 S.W.2d 511, 515 (Tex. 1998). On the other hand, where no factual issue is involved and the claim or defense is conclusively established, no request for jury instruction or submission is required to preserve the issue for appellate review. *Int'l Aircraft Sales, Inc. v. Betancourt,* 582 S.W.2d 632, 636–37 (Tex. Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

This point is overruled.

## Issue No. 3

The Bank contends that the trial court erred in rendering judgment for Lane Equipment for $1,943.35 for breach of the construction contract. The arguments raised in support of this issue are similar to those raised in Issue No. 1: that the Bank was obligated to pay no more than what was owed under the contract; that the undisputed facts show that Lane Equipment had not completed the contract; and that the Bank had already paid Lane Equipment seventy-five percent of the contract price.

The Bank cites two cases which state that whether a party has breached a contract is a question of law for the court, not a question of fact for the jury. *Lafarge Corp. v. Wolff,* 977 S.W.2d 181, 186 (Tex.App.—Austin 1998, pet. denied); *Meek v. Bishop Peterson & Sharp, P.C.,* 919 S.W.2d 805, 807 (Tex.App.—Houston [14th Dist.] 1996, writ denied). *Lafarge* does state the general proposition of law advanced by the Bank. However, the determination of factual issues regarding the breach of a contract remains with the jury. Following the statement referred to by the Bank in its brief, the *Lafarge* court states the following: "The judge determines what conduct is required of the parties and, *insofar as a dispute exists concerning the failure of a party to* *perform the contract, the judge submits the disputed fact questions to the jury."* *Lafarge,* 977 S.W.2d at 186 (emphasis added). Only when the evidence of conduct is undisputed is the matter taken from the jury. *Id.; see also Meek,* 919 S.W.2d at 808. Generally, case authority supports the position that such determination is one for the jury: whether a party has substantially complied with the terms of the contract presents a pure question of fact that the trier of fact alone may decide, *Turrill v. Life Ins. Co. of N. Am.,* 753 F.2d 1322, 1323, 1326 (5th Cir.1985) (applying Texas law); when there is conflicting evidence on the issue of whether the contractor substantially complied with the contract, the trial court should submit this issue to the jury, *Precision Homes, Inc. v. Cooper,* 671 S.W.2d 924, 927 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); it is proper to ask a jury to determine whether the evidence proves that a party breached the terms of a contract, *Navistar Int'l Transp. Corp. v. Crim Truck & Tractor Co.,* 791 S.W.2d 241, 243 (Tex.App.—Texarkana 1990), *aff'd,* 823 S.W.2d 591 (Tex.1992); the issue of whether the refusal of a construction project's plumbing, heating, and air conditioning contractor's refusal to make progress payments to a plumbing subcontractor constitutes a breach of contract, or whether the breach occurred when the plumbing subcontractor abandoned the work, was an issue for the jury, *Morgan v. Singley,* 560 S.W.2d 746, 748–49 (Tex.Civ.App.—Texarkana 1977, no writ); the determination of whether a building contractor breached his contract for construction of a residence was properly submitted to the jury, *Stanley v. Lieb,* 243 S.W.2d 227, 228–29 (Tex.Civ.App.—Eastland 1951, no writ).

The evidence as to whether Lane Equipment completed its obligations, entitling it to collect that last twenty-five percent payment from the Bank, was disputed and conflicting. Lane Equipment's witnesses testified that they completed the project as much as they were allowed. They testified

that the Bank's and Smith's continuing complaints were not justified, that they never refused to answer the complaints and attempted to correct them, and that, in their opinion, Smith was never going to be satisfied and their obligations would never end. The Bank's witnesses testified to the contrary.

The facts were clearly in dispute; the authority cited above convinces us that the trial court properly submitted this issue to the jury. This point is overruled.

### Issue No. 4

The Bank urges that the trial court erred in awarding $4,800 to Lane Equipment on the lease of the security system, when the jury also found that Lane Equipment owed the Bank $3,485 and the Bank had returned the security system.

### The Record on this Issue

In answering Jury Question No. 4, the jury found that $4,800 was due and owing to Lane Equipment from the Bank for the alarm and closed-circuit television security system. In response to Question No. 9, the jury found no evidence that the actions of Lane Equipment were a producing cause of damages to the Bank, yet found that $3,485 would compensate the Bank. Where the answers of a jury find in favor of the first party on liability, and another jury answer purports to award damages to the second party, without any finding of liability on the part of the first party, the trial court does not err in disregarding the jury's unsupported damages award. *Grafa v. Morgan*, 696 S.W.2d 492, 494 (Tex.App.—El Paso 1985, writ dism'd w.o.j.).

We note that, contrary to the Bank's position on appeal, the jury made no specific finding on the factual issue of whether the Bank had returned the security system to Lane Equipment. The Bank cited evidence that it had boxed up the ATM machine, but the machine had never been returned to Lane Equipment or picked up by Lane Equipment. There was no jury finding and no contract in evidence entitling the Bank to return the machine and no finding of breach of contract concerning the ATM machine.

As to the Bank's contention that there was never a valid contract, we would point out that the contract is in evidence. The Bank president initialed and dated the contract and made a counter offer on the terms of payment which stated "$200 per month for at least 24 months pays for all of the above." This amount would total $4,800. The Bank further accepted installation of the equipment.

### Was Error Preserved for Appeal

The error alleged in this issue was not urged in the Bank's Motion for Judgment N.O.V. Since it did not ask the trial court to render judgment n.o.v. on this basis, the motion did not preserve for appeal this claimed error. *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 725 (Tex.App.—Waco 1998, pet. denied).

At trial, the court and counsel engaged in the following colloquy:

MR. KAUFMANN: I would move to accept the verdict. I think they've answered it and I think you have to disregard No. 10.

THE COURT: I think that's right.

MR. BISHOP: Your Honor, I would contend there's a conflict with the answer to No. 10.

THE COURT: I think the Court would just have to disregard it, wouldn't it?

MR. KAUFMANN: Yes, sir.

MR. BISHOP: I don't agree, but the Court's the Court.

THE COURT: I think we've got a verdict.

In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were

apparent from the context...." TEX. R.APP.P. 33.1(a)(1)(A). This is required because: 1) fairness to all parties requires a litigant to advance complaints at a time when there is opportunity to respond or cure them; 2) reversing a case for error not raised in a timely fashion permits the losing party to second guess its tactical decisions after they do not produce the desired results; and 3) judicial economy requires that issues be raised first in the trial court in order to spare the parties and the public the expense of a potentially unnecessary appeal. *Cross Marine, Inc. v. Lee*, 905 S.W.2d 22, 25 (Tex.App.—Corpus Christi 1995, writ denied).

 In the context of the proceedings as quoted above, we find that the Bank's counsel's expression of disagreement with the trial court's decision to disregard Jury Finding No. 10 was sufficient to preserve error. The discussion at that point in the proceedings was focused solely on what to do with Jury Finding No. 10. Lane Equipment's counsel advocated disregarding the finding, and the trial court said that was what it was going to do. The Bank's counsel told the court he disagreed. This was, in these circumstances, sufficient to make the trial court aware of the Bank's position on the issue and gave the court the opportunity to change its mind. The claimed error was preserved for appeal.

### Motion for Judgment on the Verdict

 The Bank is correct that, as a general rule, when a party moves for judgment on the verdict rendered by the jury, he or she affirms that the jury's findings are properly supported by evidence. The party cannot, thereafter, take an inconsistent position in this regard on appeal. *Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319, 321–22 (Tex.1984); *Valentine v. Safeco Lloyds Ins. Co.*, 928 S.W.2d 639, 641 (Tex.App.—Houston [1st Dist.] 1996, writ denied). However, that is not what happened in the present case. The motion for judgment was made after the proceedings in the trial court quoted above. The

trial court clearly told counsel that it was going to disregard the findings to Finding No. 10. When a motion for judgment on the verdict is made, and the movant specifically preserves his objections to the verdict, he or she has preserved the right to appeal. *First Nat'l Bank of Beeville v. Fojtik*, 775 S.W.2d 632, 633 (Tex.1989). Here, not only did Lane Equipment reserve his objections to Finding No. 10, the trial judge specifically agreed with him.

Holding that Lane Equipment's motion did not specifically or implicitly affirm or accept the results on Jury Finding No. 10, this point is overruled.

### Issue No. 5

In this issue, the Bank argues that there is no evidence to support its liability in the amount of $4,800 for lease of the security system, as found by the jury. The Bank contends that no written lease was admitted into evidence and there was no evidence that the Bank breached any lease. The Bank argues *inter alia* that "there was no jury question ...." that a lease agreement was breached by the Bank.

### Was Error Properly Preserved

Lane Equipment, as with other alleged errors on appeal urged by the Bank, argues that these objections, in effect contentions of no evidence to support the verdict, were never raised at trial.

 A "no-evidence" point of error is preserved through one of the following: 1) a motion for instructed verdict, 2) a motion for judgment notwithstanding the verdict, 3) an objection to the submission of the issue to the jury, 4) a motion to disregard the jury's answer to a vital fact issue, or 5) a motion for new trial. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex.1992); *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991); *Lucas v. Titus County Hosp. Dist./Titus County Mem'l Hosp.*, 964 S.W.2d 144, 154 (Tex.App.—Texarkana), *modified*, 988 S.W.2d 740 (Tex.1998).

The record does not show that the Bank objected to jury questions two, three, and four, which permitted the jury to determine whether there was a lease agreement, whether the agreement had been breached, and the amount of damages to which Lane Equipment was entitled as a result of any breach. The record further does not show that the Bank filed a motion for instructed verdict, a motion to disregard the jury's answer to these questions, or a motion for new trial. Moreover, the Bank's Motion for Judgment N.O.V. does not request the trial court to disregard the jury's findings and render judgment for the Bank on the issue of the lease agreement, the breach thereof, or the jury's determination of damages. Because the motion did not ask the trial court to render judgment n.o.v. on this basis, the motion did not preserve this claimed error for appeal. *Brush,* 984 S.W.2d at 724.

Having failed to preserve this claimed error by any of the means set forth in the authorities cited above, we overrule this point.

### Issue No. 6

In this issue, the Bank argues its entitlement to judgment as a matter of law for its claims, alleged to be $7,867.90, plus stipulated attorney's fees, because the evidence was uncontroverted.

### Was Error Properly Preserved

This issue argues that the evidence favoring the Bank was conclusive and that the trial court had no legal choice but to award judgment to the Bank. As we have done in the Bank's other appellate claims, we must first determine whether this claim has been properly preserved for appeal. The only means by which the Bank called the trial court's attention to alleged errors was its Motion for Judgment N.O.V. In that motion, the Bank raised only three issues: (1) that it was entitled to judgment for its overpayment in the amount of $1,092.22; (2) that it was entitled to "judgment as a matter of law" because it was uncontroverted that, under the contract (for construction of the ATM building), the last twenty-five percent payment did not become due and owing until Lane Equipment completed its obligations under the contract, and that the uncontroverted evidence showed that Lane Equipment did not complete its obligations, and (3) the sales tax issue.

As we previously determined, because the Motion for Judgment N.O.V. did not request the court to grant the motion for the reasons advanced in this issue on appeal, it did not preserve for appeal this claimed trial court error. *Id.*

We also point out, again, that the Bank did not object to the trial court's giving of the jury charge calling for a factual determination of Lane Equipment's claims. Failure to utilize this or any other means of preserving a no-evidence point waives it for purposes of appeal. *T.O. Stanley Boot Co.,* 847 S.W.2d at 218. This point is overruled.

Finding no reversible error, the judgment of the trial court is affirmed.