

## NUMBER 13-20-00283-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

KEVIN SHAE COX,                                                                         Appellant,

v.

MISTY LEIGH WALDEN,                                                                 Appellee.

### On appeal from the 335th District Court
### of Burleson County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Appellee Misty Leigh Walden applied for a family violence protective order on behalf of herself and her two daughters against appellant Kevin Shae Cox. After a final protective order hearing in which Cox appeared telephonically, the trial court granted the requested protective order. Among other things, this order excluded Cox from the parties' residence, prohibited him from having any contact with Walden or her daughters, and

ordered Cox to pay attorney's fees.

In six issues on appeal, which we have reorganized, Cox contends: (1) the trial court erred by not orally entering its findings at the conclusion of the hearing; (2) the evidence was legally and factually insufficient to support the issuance of the protective order; (3) the trial court abused its discretion in prohibiting Cox from having contact "of any kind" with Walden's daughters; (4) the trial court abused its discretion in awarding Walden exclusive use of the residence; (5) the trial court abused its discretion in awarding attorney's fees without considering Cox's income and ability to pay; and (6) his telephonic appearance during the hearing constituted a denial of his due process rights.[1] We affirm.

## I.    BACKGROUND

Cox and Walden married in 2013. Walden had two daughters from a prior relationship. In April 2020, Walden applied for a protective order. The trial court held a final protective order hearing later that month. Cox and his attorney appeared telephonically at the hearing, as did Burleson County Sheriff's Deputy Zach Strouth. Walden, her attorney, and Burleson County Sheriff's Deputy Christine Labertew appeared in person. Cox did not object prior to or during the hearing about his telephonic appearance.

According to Walden, at the beginning of the parties' relationship, Cox's abuse was of a more controlling and verbal nature. It began with name-calling; Cox would call Walden

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

2

"stupid" and tell her "she didn't know anything." Then Cox began to track Walden's whereabouts and would show up where she was when he had "no reason to be there." The level of control Cox exerted reached a point where Cox would not let Walden be alone. If Walden tried to lock herself in the bathroom, Cox would "pry the door open." However, Walden testified that the abuse ultimately culminated on April 2, 2020, when Cox physically attacked her. After an argument about the dissolution of their relationship, Cox pushed "[Walden's] head into the hallway door several times" resulting in injuries to both sides of her face.

The following morning, Walden's employer contacted the police. Walden discussed the assault with the police and identified Cox as her assailant. That same day, the Burleson County Attorney's Office filed an application for a protective order on behalf of Walden and her two daughters against Cox. The application included, among other things, requests for Cox to have no contact with Walden and her daughters, for Cox to be excluded from the parties' residence, and for reasonable attorney's fees. A temporary ex parte protective order was granted, and a hearing was set on the application for April 20, 2020.

Two police officers testified at the hearing about the injuries they observed on Walden on April 3. Deputy Strouth testified that he noticed "both eyes [were] super black" and "she [had] scrapes on the right side of her face and then on the left side of the eye." There was also "bruising above the eye and . . . also her mouth was starting to bruise." When asked whether a protective order was appropriate, Deputy Strouth stated,

3

"Absolutely. This is something I was mentioning from the very get-go, just the emotions, what I observed from her injuries. It definitely raised my concern that there needs to be a protective order in place for this."

Deputy Labertew testified, "The first time I saw Ms. Walden, she had very bad blackening of her eyes. Her face was very swollen." During a follow-up meeting with Walden on April 7, Deputy Labertew noticed that Walden's "eyes were still very blackened. She also had some bruising on her arms that hadn't appeared before . . . ." Deputy Labertew also testified that she felt Walden was in danger during this follow-up meeting and would continue to be in danger in the future, due to the escalation in violence and Walden's fear that "there would be some retaliation for filing charges."

At the hearing, Walden described for the court the injuries she still had from the attack, stating there was "scarring on [her] face and some blood in one of [her] eyes." There was also some bruising "around [her] eyes and [her] forehead." Cox acknowledged that the parties had an argument the evening of April 2, but he denied "put[ting his] hands on" Walden.

At the conclusion of the hearing, the trial court granted the protective order and "all relief being requested."[2] Cox also filed a request for findings of fact and conclusions of law and a motion for new trial. The trial court denied the motion for new trial and entered its findings of fact and conclusions of law. This appeal followed.

---

[2] After the hearing, Cox filed several motions to vacate the protective order pursuant to § 83.004 of the Texas Family Code. However, this statute applies exclusively to temporary ex parte protective orders and does not apply to final protective orders. *See* TEX. FAM. CODE. ANN. § 83.004.

## II.  TEX. FAM. CODE ANN. § 85.001(a)

In what we interpret as an issue of statutory construction, Cox argues that the trial court erred by failing to orally render the findings required by § 85.001(a) of the Texas Family Code at the conclusion of the hearing.

### A.  Standard of Review

We review questions of statutory interpretation de novo. *Sommers for Ala. & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017). When construing statutes, our primary objective is to give effect to the Legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We presume legislative intent is reflected in the words of the statute and accord those words their fair meaning. *See Sommers*, 521 S.W.3d at 754. We assume that "lawmaker-authors chose their words carefully, both in what they included and in what they excluded." *Id.*

### B.  Analysis

"At the close of a hearing on an application for a protective order" a court is required to find whether "family violence has occurred" and whether "family violence is likely to occur in the future." TEX. FAM. CODE ANN. § 85.001(a). If a court does find that family violence has occurred in the past and is likely to occur again, it is required to render a protective order. *Id.* §§ 81.001, 85.001(b).

Cox asks this Court to recognize that § 85.001(a) "means what it says," but he provides us with no legal authority to guide our statutory analysis. *See* TEX. R. APP. P. 38.1(i) ("[A] brief must contain a clear and concise argument for the contentions made,

5

with appropriate citations to authorities and to the record."). Further, the harm Cox suggests he suffered as a result of the trial court's failure to recite the required findings verbally was a deprivation of "the opportunity to preserve the error that would have inhered in them or to move to vacate or otherwise seek relief from the court's findings before they were reduced to the final protective order." However, Cox did not object at the hearing to the court granting the protective order without orally ruling on the required findings. Nor did Cox raise this issue in his motion for new trial. Thus, Cox has also failed to adequately demonstrate how any supposed harm could have resulted in reversible error. *See* TEX. R. APP. P. 44.1.[3]

---

[3] It is a rule of statutory interpretation that words "excluded from a statute must . . . be presumed to have been excluded for a purpose." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). While §§ 85.001(c) and (d) of the Texas Family Code require the court to make written findings in certain protective orders, § 85.001(a) does not specify the manner in which a court is to provide its findings. See TEX. FAM. CODE ANN. §§ 85.001(a), (c), and (d). Title 4 of the Texas Family Code is remedial in nature, and we are to broadly construe its provisions to "effectuate its humanitarian and preventative purposes." *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Roper v. Jolliffe*, 493 S.W.3d 624, 634 (Tex. App.—Dallas 2015, pet. denied). The statute in question does not expressly forbid a court from reducing its findings to writing after a hearing, nor does it require the findings be expressly made during the hearing or in the protective order. *See* TEX. FAM. CODE ANN. § 85.001; *see also In re M.I.W.,* No. 04-17-00207-CV, 2018 WL 1831678, at *2 (Tex. App.—San Antonio Apr. 18, 2018, no pet.) (mem. op.) (holding §§ 85.001(a) and (b) "do not require the trial court to recite [required] findings either on the record at the close of the hearing or in the protective order itself"); *Scott v. Wooley*, No. 02-19-00318-CV, 2020 WL 7063292, at *5 (Tex. App.—Ft. Worth Dec. 3, 2020, no pet.) (mem. op.) (holding that trial court's failure to expressly rule on required family violence findings was not reversible error where appellant failed to show harm). We note that no manner of rendition is prescribed by the statute and we decline to hold that § 85.001(a) requires a court to orally render the required family violence findings at a protective order hearing. *See* TEX. FAM. CODE ANN. § 85.001; *see also In re M.I.W.*, 2018 WL 1831678, at *2; *Scott*, 2020 WL 7063292, at *5.

At the conclusion of the hearing on Walden's application for a protective order, the court stated, "The protective order is going to be granted. All relief being requested is granted." Because the court granted the family violence protective order requested, it must have found family violence occurred in the past and that it was likely to occur in the future. See TEX. FAM. CODE ANN. § 81.001. The record supports this conclusion, as the final protective order, which was signed by the court within an hour of the hearing's adjournment, included the findings required by § 85.001(a). In its findings of fact and conclusions of law, the court also found "that family violence occurred . . . [and] that family violence is likely to occur in the future."

We therefore overrule this issue.

## III. SUFFICIENCY OF THE EVIDENCE

In his second issue, Cox challenges the sufficiency of the evidence to support the court's findings that family violence occurred in the past and that it is likely to occur in the future.

### A. Standard of Review

A trial court's findings of fact in a bench trial "have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When the trial court acts as a fact finder, its findings are reviewed under legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000).

In a legal sufficiency review, we consider the evidence presented at trial in the light most favorable to the findings before us and will indulge every inference in favor of the prevailing party. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). The test for legal sufficiency "must always be whether the evidence at trial would enable [a] reasonable and fair-minded [fact finder] to reach the [conclusion] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

Since the fact finder is the sole judge of a witness's credibility and demeanor, we must defer to its factual determinations. *Id.* at 819. We "assume that the fact[ ]finder resolved disputed facts in favor of its finding if a reasonable fact[ ]finder could do so," and we "disregard all evidence that a reasonable fact[ ]finder could have disbelieved or found to have been incredible." *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (quoting *In re*

7

*J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002)). We do not disturb the trial court's judgment under a legal sufficiency review unless the record shows one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

In a factual sufficiency review, we consider and weigh all evidence presented in a neutral light. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We overturn the trial court's determination only if it is "so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *City of Keller*, 168 S.W.3d at 826.

## B.    Applicable Law

As previously discussed, a court must issue a protective order if it finds family violence occurred in the past and that family violence is likely to occur in the future. *See* Tex. Fam. Code Ann. §§ 85.001(b)(1), 81.001. "Family violence" includes:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

*Id.* § 71.004(a). We focus our analysis, therefore, on the evidence regarding an act or threat committed against Walden that was intended to result in or reasonably placed Walden in fear of "physical harm, bodily injury, assault, or sexual assault," and on the

likelihood that any act or threat may reoccur in the future. *See id.* §§ 81.001, 85.001; *see also Warren v. Earley*, No. 10-10-00428-CV, 2011 WL 3850035, at *3 (Tex. App.—Waco Aug. 31, 2011, no pet.) (mem. op.).

## C.    Analysis

At trial, Walden testified to the escalation in violence that occurred. Walden testified that Cox pushed her head into the hallway door several times. The deputies testified to the extensive injuries Walden suffered as a result of this attack, and Walden pointed out to the trial court the injuries she still had at the protective order hearing two weeks later.

When Cox took the stand, he denied the attack and provided no cogent explanation as to how his wife developed these injuries. He did, however, discuss his wife's history of adultery and self-harm. The trial court was within its discretion to believe Walden's account of events and disbelieve Cox's. *See In re J.F.-G.*, 627 S.W.3d at 312.

Courts have recognized that "[o]ftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *In re Epperson,* 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.) (citing *In re T.L.S.,* 170 S.W.3d 164, 166 (Tex. App.—Waco 2005, no pet.), *overruled on other grounds by In re J.D.*, 304 S.W.3d 522 (Tex. App.—Waco 2009, no pet.)); *Warren*, 2011 WL 3850035 at *3. Under this principle, if a court determines an individual committed an act of family violence during one incident, it would be permitted to find that the actor was likely to engage in family violence in the future.

9

*See Boyd*, 425 S.W.3d at 432; *see also Carson v. Carson*, No. 07-16-00311-CV, 2017 WL 4341456, at *3 (Tex. App.—Amarillo Sep. 29, 2017, no pet.) (mem. op.) ("[O]ne act of family violence could conceivably support a finding of likely future violence for purposes of § 81.001."); *Collier v. State*, No. 12-13-00142-CV, 2013 WL 4769267, at *3 (Tex. App.—Tyler Sep. 4, 2013, no pet.) (mem. op.) ("Nowhere within [§] 81.001 is there language from which it may even be inferred that more than one incident of family violence must occur before a protective order may issue."). This is especially true when the actor denies the incident of family violence ever occurred and the fact finder does not believe that denial. *Martin v. Martin*, 545 S.W.3d 162, 168 (Tex. App.—El Paso, 2017, no pet.). In that situation, the lack of explanation or remorse would allow a reasonable fact finder to conclude that history may repeat itself. *Id.*

The evidence was sufficient to support the issuance of the protective order based solely on the incident that occurred on April 2, 2020. [4] The trial court could have reasonably concluded that this incident of family violence occurred, and, based on his lack of remorse, Cox was likely to commit family violence in the future. Because there is more than a scintilla of evidence on which the trial court's judgment can be supported, we hold that the evidence is legally sufficient to support the court's findings that family violence occurred and was likely to occur again. We also hold that, in weighing all the evidence, the trial court's findings that family violence occurred and was likely to occur in

---

[4] An incident of sexual assault was also discussed in the affidavit Walden attached to her application (which was not offered or admitted into evidence) and was only mentioned by Deputy Labertew during her testimony as a "possible sexual assault." No other reference to this incident was made during the protective order hearing.

10

the future were not so contrary to the overwhelming weight and preponderance of the evidence that they are clearly unjust.

We overrule this issue.

## IV. PROVISIONS OF THE PROTECTIVE ORDER

In his third and fourth issues, Cox complains the trial court abused its discretion by including Walden's daughters in a "no contact" provision in the final protective order and by excluding Cox from what he alleges was his separate property residence.

## A. Standard of Review

We review the provisions included in a protective order for an abuse of discretion. *In re Doe*, 19 S.W.3d at 253 ("The abuse of discretion standard applies when a trial court has discretion either to grant or deny relief based on its factual determinations."); *see Dolgener v. Dolgener*, No. 14-19-00645-CV, 2021 WL 3883619, at * 13, __ S.W.3d __, __ (Tex. App.—Houston [14th Dist.] Aug. 31, 2021, no pet.); *Rodriguez v. Doe*, 614 S.W.3d at 380 (Tex. App.—Houston [14th Dist.] 2020, no pet.); TEX. FAM. CODE ANN. §§ 85.021 (listing prohibitions a trial court may enter against any party to a protective order), 85.022(b) (listing prohibitions a trial court may enter in a protective order against a party found to have committed family violence). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *Berkel & Co. Contractors, Inc. v. Lee*, 612 S.W.3d 280, 287 (Tex. 2020). Under an abuse of discretion standard, the legal and factual sufficiency of the evidence are relevant factors in determining whether the trial court abused its discretion, but they are not independent

11

grounds of error. *See Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied); *see also Burkett v. Burkett*, No. 13-18-00385-CV, 2019 WL 3331635, at *6 (Tex. App.—Corpus Christi–Edinburg Jul. 25, 2019, pet. denied) (mem. op.). A trial court does not abuse its discretion when some evidence reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

## B.     No Contact Provision

### 1.     Applicable Law

A court "shall render a protective order as provided by [§] 85.022 applying only to a person found to have committed family violence" if it finds that family violence has occurred in the past and that it is likely to occur in the future. Tex. Fam. Code Ann. § 85.001(b)(1). The plain wording of § 85.022(b) gives courts significant discretion as to the specific provisions of the order: "the court *may* prohibit the person found to have committed family violence" from certain conduct. *Id.* at § 85.022(b) (emphasis added). This includes prohibiting the person found to have committed family violence from having any form of communication with "a person protected by an order or a member of the family or household of a person protected by an order, except through the party's attorney or a person appointed by the court" if the court finds good cause to do so. *Id.* § 85.022(b)(2)(C). A court is not required to find that family or household members have also been the victims of family violence before it may include them in a protective order's provisions under § 85.022. *See id.* § 85.022; *Dolgener*, 2021 WL 3883619, at *12.

## 2. Analysis

Here, it is undisputed that Walden's daughters are members of her family. *See* TEX. FAM. CODE ANN. § 71.003 (defining family to include "individuals related by consanguinity or affinity"). The trial court therefore had discretion to order Cox to have no contact with them if it found good cause to do so. *See id.* § 85.001(b)(1). There is a dearth of case law to guide our analysis of what might constitute good cause to prohibit an abuser from having any manner of communication with a family member of a protected person. However, we acknowledge that this subsection of § 85.022, like the ones surrounding it, contemplates that an abuser's contact with a member of the victim's family could inevitably lead to additional contact with the victim. *See id.* §§ 85.022(b)(2)(C), 85.022(b)(3) (providing that a trial court may prohibit a person from "going to or near the residence or place of employment or business of. . . a member of the family or household of a person protected by an order"); *Martin*, 545 S.W.3d at 168. Additionally, members of the family or household may themselves be at risk of future harm just by virtue of their relationship with the victim. *Dolgener*, 2021 WL 3883619, at *12.

In her initial application, Walden requested that Cox be prohibited from having any contact with either of her daughters. Evidence was presented at the protective order hearing that the girls lived with Walden and Cox during their relationship. Walden also testified that Cox's unpredictable behavior towards her daughters "caused a lot of anxiety." Based on this evidence, the trial court could reasonably conclude that any contact Cox might have with Walden's daughters could create further harm for Walden.

13

Because some evidence exists to support the trial court's inclusion of Walden's daughters in the no contact provision of the protective order, we conclude the trial court did not abuse its discretion.

We overrule this issue.

**C.      Exclusion from Residence**

**1.      Applicable law**

As part of a protective order, a court may

> grant exclusive possession of a residence to a party and, if appropriate, direct one or more parties to vacate the residence if the residence . . . is owned or leased by the party being denied possession and that party has an obligation to support the party or a child of the party granted possession of the residence.

TEX. FAM. CODE ANN. § 85.021(2).

**2.      Analysis**

We need not reach a determination as to whether the residence was in fact Cox's separate property to conclude that the trial court did not abuse its discretion in awarding Walden exclusive use of the residence. If the property was community property, the trial court was within its discretion to award exclusive use of that residence to Walden. *See id.* § 85.021(2)(A) (permitting a trial court to grant exclusive possession of a residence to a party if it "is jointly owned or leased by the party receiving exclusive possession and a party being denied possession"). If, instead, the property was Cox's separate property, the court could award Walden exclusive use of the residence if Cox had "an obligation to support [Walden] or a child of [Walden.]" *Id.* § 85.021(2)(C).

14

No evidence was presented to show that Cox had an obligation to support Walden's daughters. However, each Texan "has a duty to support [his or her] spouse." *See id.* § 2.501(a); *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993) ("The obligation which the law imposes on spouses to support one another . . . [is] a legal duty arising out of the status of the parties."). Here, undisputed evidence was shown that Cox and Walden were husband and wife at the time of the hearing. Cox therefore had a duty to support Walden. *See* TEX. FAM. CODE ANN. § 2.501(a). Thus, we conclude that the trial court acted within its discretion when it excluded Cox from the use of the residence.[5]

We overrule this issue.

## V.     ATTORNEY'S FEES

In his fifth issue, Cox argues the court "did not consider, let alone make findings about, [his] income or ability to pay" prior to awarding attorney's fees in the amount of $175. This, Cox contends, renders the order "void."

### A.     Standard of Review & Applicable Law

A court may assess reasonable attorney's fees against the party found to have committed family violence. *Id.* § 81.005(a). "In setting the amount of attorney's fees, the court shall consider the income and ability to pay of the person against whom the fee is assessed." *Id.* § 81.005(b). We review a trial court's award for attorney's fees in a protective order for an abuse of discretion. *See Dolgener*, 2021 WL 3883619, at *17; *see*

---

[5] We further note that by awarding exclusive possession of the residence to Walden, the court did not affect title to the residence. *See* TEX. FAM. CODE ANN. § 85.023 ("A protective order . . . under this subtitle does not affect the title to real property.") If the residence in question is indeed Cox's separate property, nothing in this memorandum opinion should be construed to controvert that.

15

*also Huffines v. Huffines*, No. 13-00-008-CV, 2001 WL 34615333, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 11, 2001, no pet.) (not designated for publication).

The burden of proof for setting the amount of attorney's fees awarded in a protective order case is divided between the applicant and person against whom attorney's fees are assessed. *See* TEX. FAM. CODE ANN. § 81.005; *Dolgener*, 2021 WL 3883619, at *17; *see also Sylvester v. Nilsson*, No. 14-19-00901-CV, 2021 WL 970924, at *6 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.) (mem. op.) (quoting *Ford v. Harbour*, No. 14-07-00832-CV, 2009 WL 679672, at *6 (Tex. App.—Houston [14th Dist.] Mar. 19, 2009, no pet.) (mem. op.)). It is the applicant's initial burden to show that the fees requested were reasonable and were incurred as a result of the application for and prosecution of her protective order. *See* TEX. FAM. CODE ANN. § 81.005(a); *Dolgener*, 2021 WL 3883619, at *17. After that burden is met, it is the person against whom the fee is assessed who must provide evidence of his "income and ability to pay." *See* TEX. FAM. CODE ANN. § 81.005(b); *Dolgener*, 2021 WL 3883619, at *17.

After the court files original findings of fact and conclusions of law, any party may file with the clerk of the court a request for specified additional or amended findings or conclusions. TEX. R. CIV. P. 298. "If the trial court's original findings do not include any findings on a ground of recovery or defense . . . then the party relying on the ground of recovery or the defense must request additional findings of fact in proper form or the ground is waived." *Howe v. Howe*, 551 S.W.3d 236, 248 (Tex. App.—El Paso 2018, no pet.); *see Smith v. Smith*, 22 S.W.3d 140, 149 (Tex. App.—Houston [14th Dist.] 2000, no

16

pet.). We presume that the trial judge made all fact findings needed to support the judgment. *Smith*, 22 S.W.3d at 149.

## B.    Analysis

In this case, the court found that Cox committed family violence, and was therefore authorized to assess reasonable attorney's fees against him. *See* TEX. FAM. CODE ANN. § 81.005(a). The trial court issued findings of fact and conclusions of law pursuant to Cox's request, but those findings and conclusions did not mention the award of attorney's fees, and Cox did not ask for additional findings and conclusions regarding his ability to pay. Because Cox did not request any findings on an inability to pay defense, he cannot rely on the lack of an express specific finding as a ground for reversal. *See Howe*, 551 S.W.3d at 248; *Pagare v. Pagare*, 344 S.W.3d 575, 581 (Tex. App.—Dallas 2011, pet. denied); *Smith*, 22 S.W.3d at 149 ("Failure by a party to request additional or amended findings or conclusions waives the party's right to complain on appeal about the presumed finding."); *see also Laufer v. Gordon*, No. 14-18-00744-CV, 2019 WL 6210200, at *5 (Tex. App.—Houston [14th Dist.] Nov. 21, 2019, no pet.) (mem. op.).

Cox has not challenged the lack of findings as to the reasonableness of the attorney's fees incurred. "[A]n appellate court has no discretion to fabricate an issue not raised in the appellant's brief." *Bankhead v. Maddox*, 135 S.W.3d 162, 163–64 (Tex. App.—Tyler 2004, no pet.). We overrule this issue.

## VI.    DUE-PROCESS COMPLAINT

Lastly, Cox argues that his due process rights were violated because both he and

his attorney appeared telephonically rather than personally at the final protective order hearing. Walden contends that Cox has failed to preserve this issue for appellate review. We agree with Walden.

## A.    Standard of Review

To preserve error for appellate review, a party must make a timely request to the trial court that states the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A); *see In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999) (requiring party to apprise trial court of error before that error can become basis for reversal). A timely objection is one that is interposed at a point in the proceedings that gives the trial court the opportunity to cure any alleged errors. *Anderton v. Green*, 555 S.W.3d 361, 372 n.4 (Tex. App.—Austin 2018, no pet.); *see also In re C.A.*, No. 10-16-00351-CV, 2021 WL 409621, at *4 (Tex. App.—Waco Feb. 3, 2021, no pet.) (mem. op.). The reason for requiring a timely request or objection is threefold: (1) fairness to all parties requires a litigant to advance complaints at a time when there is an opportunity to respond or cure them; (2) reversing a case for error not raised in a timely fashion permits the losing party to second guess its tactical decisions after they do not produce the desired result; and (3) judicial economy requires that issues be raised first in the trial court in order to spare the parties and the public the expense of a potentially unnecessary appeal. *Cross Marine, Inc. v. Lee*, 905 S.W.2d 22, 25 (Tex. App.—Corpus Christi–Edinburg 1995, writ denied). Even constitutional claims, such as due process complaints, can be waived without a proper objection. *See In re L.M.I.*, 119 S.W.3d 707,

18

708 (Tex. 2003); *see also In re S.R.*, No. 10-20-00281-CV, 2021 WL 824979, at *2 (Tex. App.—Waco Mar. 3, 2021, pet denied) (mem. op.); *In re C.L.B.*, No. 10–13–00203–CV, 2014 WL 702798, at *8 (Tex. App.—Waco Feb. 20, 2014, no pet.) (mem. op.) (holding that due process complaint about lack of service raised for first time in post-judgment motion was untimely).

## B.   Analysis

To preserve his due process complaint for review, Cox was required to complain to the trial court at a time when it was in the position to correct the alleged harm. Cox lodged no objection prior to or during the hearing about his telephonic appearance. It was not until his motion for new trial was filed thirty days later that Cox finally apprised the trial court of his due process complaint. We cannot construe this objection as timely, as it was not made at the earliest possible time or opportunity that would have allowed the trial court to cure any error. *See Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.). We conclude that Cox has not preserved this issue for appellate review. *See* TEX. R. APP. P. 33.1. We overrule this issue.

## VII.   CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
13th day of January, 2022.

19