**CITIMORTGAGE, INC., Appellant,**

**v.**

**Ann HUBENER, Jose Olvera, and Marta Leticia Yanez, Appellees.[1]**

**No. 05–09–01498–CV.**

Court of Appeals of Texas, Dallas.

June 28, 2011.

---

1. Ann Hubener is the only appellee who filed a brief in this appeal.

Michael J. McKleroy, Jr., Robert S. Alcorn, Robert F. Maris, Maris & Lanier, P.C., Dallas, TX, Melissa McKinney, Connie J. Vandergriff, Barrett Daffin Frappier Turner & Engel, LLP, Addison, TX, for Appellant.

J. Darlene Ewing, Law Offices of J. Darlene Ewing, Sunnyvale, TX, Vincent Chucks Ndukwe, Law Office of MNC Vincent & Associates, Dallas, TX, Marta Leticia Yanez, Coppell, TX, for Appellees.

Before Justices MARTIN RICHTER, LANG, and FILLMORE.

## OPINION [2]

Opinion By Justice FILLMORE.

Jose Olvera filed for divorce from Marta Leticia Yanez. Although Yanez filed an answer, she did not appear at the final hearing on September 15, 2006. On September 26, 2006, the trial court signed a final divorce decree awarding Olvera and Yanez each fifty percent of the net proceeds from the sale of what was evidently represented by Olvera at the final hearing to be the marital residence.[3]

In December 2007, Olvera requested the trial court appoint a receiver to sell the property. Olvera's attorney represented to the trial court that Yanez had not cooperated in selling the property. An attorney appearing on behalf of Yanez indicated that one of Yanez's relatives was living in the house and had an ownership interest in the property. The trial court granted Olvera's request and, on January 3, 2008, appointed Ann Hubener as the receiver. Over a year after Hubener was appointed, CitiMortgage, Inc., the lienholder on the property, intervened in the case and requested the trial court dissolve the receivership. Only Hubener filed an opposition to CitiMortgage's motion to dissolve the receivership. Olvera's attorney appeared at two hearings before the associate judge

---

**2.** CitiMortgage, Inc. has not challenged the sufficiency of the evidence to support the trial court's order. Accordingly, we include in this opinion only those facts necessary to address CitiMortgage's complaints on appeal.

**3.** The record does not include a transcript of the September 15, 2006 hearing.

concerning CitiMortgage's motion to dissolve the receivership, but did not appear at the hearing before the trial court on the motion.[4] Although CitiMortgage served her with a copy of the petition in intervention and motion to dissolve the receivership, Yanez did not appear and filed no opposition to the motion.

On November 24, 2009, the trial court denied CitiMortgage's motion and entered an "Order on Receivership" that kept the receivership in full force and effect, awarded Hubener $5,300 for expenses and fees, authorized Hubener to lease the property and receive a management fee "prior to payment of all liens, taxes and insurance," and ordered that when the property was sold, Hubener would "be paid from the gross proceeds of the sale, prior to payment of any and all liens, taxes, commissions, or other costs of sale." CitiMortgage appealed, arguing in three issues that the trial court erred by appointing a receiver, by refusing to dissolve the receivership, and by ordering the receiver's fees and expenses be paid before anything else from the gross proceeds of any lease or sale of the property. We vacate the trial court's November 24th Order on Receivership and render judgment dissolving the receivership.

### Appeal of Order Appointing Receiver

In its first issue, CitiMortgage asserts the trial court erred by appointing Huben-

er as the receiver on January 3, 2008. On May 12, 2011, we notified the parties that we questioned our jurisdiction over the appeal of the order appointing a receiver. We requested the parties address whether the order was subject to interlocutory appeal under either section 6.507 of the family code or article 51.014(a)(1) of the civil practice and remedies code and was required to be appealed within twenty days of the date of the order. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(1) (West 2008); Tex. Fam.Code Ann. § 6.507 (West 2006); Tex.R.App. P. 26.1, 28.1; *Long v. Spencer*, 137 S.W.3d 923, 926 (Tex.App.-Dallas 2004, no pet.) ("The right to appeal the order of receivership itself must be exercised within twenty days after the receivership order is entered."). At oral argument, CitiMortgage's counsel conceded CitiMortgage's challenge to the original order appointing Hubener as the receiver was not timely and stated CitiMortgage was abandoning its first issue on appeal. Accordingly, we will not address CitiMortgage's first issue.

### Appeal of Order Denying Motion to Dissolve Receivership

■ In its second and third issues, CitiMortgage contends the trial court erred by denying CitiMortgage's motion to dissolve the receivership and by ordering that Hubener's expenses be paid before anything else from the gross proceeds of any sale or lease of the property.[5] We review a trial

---

4. The trial court initially referred CitiMortgage's motion to dissolve the receivership to an associate judge. *See* Tex. Fam.Code Ann. § 201.001(a) (West 2008) (trial court having jurisdiction over suit under Title I of family code (governing the marriage relationship) may appoint associate judge to perform duties authorized by chapter 201 of family code). The associate judge granted CitiMortgage's motion and dissolved the receivership. Hubener appealed the associate judge's ruling to the trial court for a de novo hearing. *See id.* § 201.015 (West Supp. 2010).

5. In a receivership, as in probate cases, there can be more than one final order. *Huston v. Fed. Deposit Ins. Co.*, 800 S.W.2d 845, 847 (Tex.1990); *Art Inst. of Chicago v. Integral Hedging, L.P.*, 129 S.W.3d 564, 571 (Tex.App.-Dallas 2003, no pet.). We have previously concluded that the denial of a motion to dissolve a receivership is a final order subject to regular appeal. *Christie v. Lowrey*, 589 S.W.2d 870, 874 (Tex.Civ.App.-Dallas 1979, no writ). CitiMortgage timely filed its appeal from the trial court's order denying the mo-

court's decision on whether to terminate a receivership under an abuse of discretion standard. *Mallou v. Payne & Vendig,* 750 S.W.2d 251, 254 (Tex.App.-Dallas 1988, writ denied); *Chase Manhattan Bank v. Bowles,* 52 S.W.3d 871, 879 (Tex.App.-Waco 2001, no pet.); *Gilles v. Yarbrough,* 224 S.W.2d 720, 722 (Tex.Civ.App.-Fort Worth 1949, no writ) ("The duration of a receivership and its termination is within the sound judicial discretion of the court in which the suit is pending."). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, such that its ruling was arbitrary or unreasonable. *Low v. Henry,* 221 S.W.3d 609, 614 (Tex.2007).

Hubener was the only witness at the hearing on CitiMortgage's motion to dissolve the receivership. She testified that, when she was appointed as the receiver, there was not enough equity in the property to pay the amount owed on the lien. She immediately contacted CitiMortgage about approving a "short sale" on the property.[6] CitiMortgage required Hubener to put the property on the market for ninety days before it would discuss a short sale. Hubener received an offer on the property, but held it until the ninety day period had passed. CitiMortgage then requested the owners of the property complete financial reports to confirm they did not have sufficient funds to pay the deficiency between the sales price and the amount owed on the loan. Hubener obtained some financial information from Olvera, who was not a borrower on the loan, but could not obtain the requested information from Yanez or her brother, the

two borrowers on the loan. Hubener ultimately received four offers on the property, but CitiMortgage never approved a short sale. In Hubener's opinion, if the property had sold, there would have been a deficiency between the sales price and the amount owed on the mortgage of approximately $30,000.

According to Hubener, the housing market was recovering, but the proceeds of any sale under the market conditions at the time of the hearing would not be sufficient to pay the amount outstanding on the mortgage. Hubener requested she be allowed to lease the property until it could be sold for a higher price because she "would like to be able to recover some of [the receiver's] fees and expenses." She testified her fees and expenses at that time were "$5,200 or $5,300." Hubener indicated she could also make "some kind of payments" to CitiMortgage from any lease payments. The trial court stated:

> Okay. I'm going to leave the receivership intact, and I am going to find that the receiver is owed the sum of $5,300.

> Now, Counsel, here's my concern since this Court appointed this professional. Any time I appoint an amicus attorney, guardian ad litem, receiver, mental health professionals, they did not ask to come to this party so they are entitled to be paid.

> They are testifying right now that their fee is $5,300. So I am going to find that they're owed $5,300. We have a piece of property sitting here empty so I am going to order that the receiver may rent the property and that you're to be

---

tion to dissolve the receivership, giving us jurisdiction over the appeal from that order.

**6.** A real estate "short sale" is a "transaction in which the mortgagor, with the consent of the mortgagee, sells the real property to a

third party for a price that results in the mortgagee receiving less than the amount due it, *i.e.,* a deficiency." *In re Roberts,* No. 09–52155, 2011 WL 2118857, at *1 n. 2 (U.S.Bankr.D.Conn. May 25, 2011).

paid management fees until such time as the property is sold.

Now, the reality of the matter is we don't know where [Yanez's brother] is, and I think that we have to find [out] some way where [Yanez's brother] is. But off the top of whatever we sell, I expect the receivers to receive their funds because they did not ask to be here.

They were brought into this as a result of the action of this Court. Now, if y'all can talk and work something out, I think everybody clearly wants to go on down the line with their life right now so certainly this—everybody would benefit if y'all can talk about how you resolve this.

But as of right now [the receiver is] owed $5,300, and I expect [her] to get paid.

CitiMortgage contends the trial court abused its discretion by denying the motion to dissolve the receivership because continuing the receivership served no purpose other than to pay Hubener's fees. Hubener argues there were other reasons for continuing the receivership, including CitiMortgage's unwillingness to cooperate in a short sale, her ability to lease the property, and maintaining the property until the market improved.

■ Generally, "a receivership is always subject to vested rights," and a lienholder's interest in property held in a receivership "has priority over costs and expenses incurred in the administration and operation of the receivership." *Tennant v. Dunn*, 130 Tex. 285, 295, 110 S.W.2d 53, 59 (1937); *Hayes v. Gardner*, 40 S.W.2d 917, 918–19 (Tex.Civ.App.-Dallas 1931, no writ); *Bowles*, 52 S.W.3d at 880. The only exceptions to this rule are (1) when the receivership is formed at the instigation of the lienholder, or the lienholder acquiesces to the receivership and seeks its benefits, and

(2) when the lienholder knows of and consents to the receivership and fees, expenses, and debts are incurred from the receiver's operation of a business affected with a public interest. *Tennant*, 130 Tex. at 295, 110 S.W.2d at 59; *Craver v. Greer*, 107 Tex. 356, 364–65, 179 S.W. 862, 866 (1915); *Clint v. Houston Ice & Brewing Co.*, 106 Tex. 508, 508–09, 169 S.W. 411, 411 (1913) (op. on denial of writ of error) (because company was not a public corporation, "it was not permissible for the court to postpone the prior lien of [the company] to the expenses and costs of the receivership"); *Ellis v. Vernon Ice, Light & Water Co.*, 86 Tex. 109, 112, 23 S.W. 858, 860 (1893); *Bowles*, 52 S.W.3d at 880.

■ Neither exception applies in this case. CitiMortgage was not a party to the divorce action at the time the receiver was appointed. It neither requested the appointment of the receiver nor acquiesced to the receivership and sought its benefits. Further, the receiver's fees and expenses were not incurred from her operation of a business affected with a public interest. CitiMortgage's lien, therefore, takes priority over Hubener's fees and expenses. *See Tennant*, 130 Tex. at 295, 110 S.W.2d at 59; *Bowles*, 52 S.W.3d at 879–80; *B.B.M.M., Ltd. v. Tex. Commerce Bank–Chem.*, 777 S.W.2d 193, 197 (Tex.App.-Houston [14th Dist.] 1989, no writ) ("Texas courts have long recognized that the proceeds of mortgaged property sold by a receiver are to be applied first to the principal and interest due to the mortgagee."). It is undisputed that the proceeds from any sale of the property will not be sufficient to satisfy the outstanding balance on CitiMortgage's lien. Because there is no equity in the property, all proceeds from a sale would go to satisfy CitiMortgage's lien and "no reason remained for the trial court to keep the

property in the receivership." *Bowles,* 52 S.W.3d at 880.

■ Hubener argues *Bowles* is distinguishable because it involved the sale of the property while, in this case, the trial court authorized Hubener to lease the property until the housing market improved. However, as the receiver, Hubener was charged with the responsibility of protecting the interests of the parties and of CitiMortgage. *See Sec. Trust Co. of Austin v. Lipscomb Cnty.,* 142 Tex. 572, 584, 180 S.W.2d 151, 158 (1944) (receiver "is a disinterested party, the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property in receivership"); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. ECourt, Inc.,* No. 03–02–00714–CV, 2003 WL 21025030, at *4 (Tex. App.-Austin May 8, 2003, no pet.) (mem. op.). The record does not reflect when, or even if, Hubener expected the market to improve to the point Olvera and Yanez might benefit from keeping the property in receivership. CitiMortgage, on the other hand, had not received any payments on the loan on the property for an extended period of time and had the right pursuant to the loan documents to mitigate its losses by foreclosing on the property. Further, the record reflects Hubener's and the trial court's main concern was not to protect any interest Olvera and Yanez had in the property, but to generate sufficient revenue from the property to pay Hubener's fees. Hubener cites no authority, and we have found none, that allows a property subject to a valid lien to be kept in receivership for the purpose of generating funds to pay the receiver's fees. *See Bowles,* 52 S.W.3d at 880–81 (trial court abused its discretion by keeping property in receivership when there was no equity in property and liens of banks took precedence over receiver's fees, costs, and expenses); *see*

*also First S. Properties v. Vallone,* 533 S.W.2d 339, 343 (Tex.1976) ("receivership destroys no prior vested right, nor does it determine any right as between the parties by reason of an existing contract"); *Craver,* 107 Tex. at 364, 179 S.W. at 866 (trial court may not through a receivership "impair the force of contracts"); *Mid–Continent Supply Co. v. Conway,* 240 S.W.2d 796, 802 (Tex.Civ.App.-Texarkana 1951, writ ref'd n.r.e.) ("A court administering the rights of litigants in accord with the principles of law and equity has no inherent right, simply by virtue of its judicial authority, to displace valid mortgage liens that are fixed upon the property, and which is subject to the liens, and require that such liens shall be postponed to claims which were not in existence at the time the mortgage liens were created, or are not based upon some contract or provision of the law which gives them a prior right over the mortgage liens.").

We conclude the trial court abused its discretion by denying CitiMortgage's motion to dissolve the receivership and by ordering that Hubener's fees and expenses would take priority over any liens, taxes, commissions or other costs of sale. *See Bowles,* 52 S.W.3d at 879. We sustain CitiMortgage's second and third issues. We vacate the trial court's November 24th "Order on Receivership" and render judgment ordering the receivership dissolved.