

## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

§

UNIT 82 JOINT VENTURE,
FIVE STAR HOLDING COMPANY,
INC., FIVE STAR HOLDING
MANAGEMENT, L.L.C., AND
1320/1390 DON HASKINS, LTC.,

Appellants,

v.

INTERNATIONAL COMMERCIAL
BANK OF CHINA, LOS ANGELES
BRANCH, MAYNARDS INDUSTRIES
(1991) INC. D/B/A MAYNARDS
INDUSTRIES, LTD., AND
ROBB EVANS, RECEIVER FOR
MEDIACOPY TEXAS, INC.,

Appellees.

§

§

§

§

§

§

§

§

§

§

§

§

§

No. 08-13-00088-CV

Appeal from

327th District Court

of El Paso County, Texas

(TC # 2005-1987)

## **O P I N I O N**

Appellants, Unit 82 Joint Venture, Five Star Holding Company, Inc., Five Star Holding Management, L.L.C., and 1320/1390 Don Haskins, Ltd., appeal from the trial court's orders determining that the ancillary receivership did not violate a bankruptcy stay and terminating the ancillary receivership and discharging the receiver because the ancillary receivership expired by statute on March 24, 2013. For the reasons that follow, we affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

On May 28, 2010, this court issued an opinion and judgment which vacated the judgment of the trial court and dismissed the suit below because we concluded that the ancillary receivership violated a bankruptcy stay which arose when Mediacopy, a California Corporation (M-CA), declared bankruptcy. *Unit 82 Joint Venture v. Mediacopy Texas, Inc.*, 349 S.W.3d 42 (Tex.App.--El Paso 2010). The Texas Supreme Court disagreed because it concluded there was a fact issue as to whether M-CA had an interest in any of the warehouse property sold by the ancillary receiver and it held that we should have abated the appeal to allow the application of the automatic stay to be determined by the trial court. *Evans v. Unit 82 Joint Venture*, 377 S.W.3d 694, 694-95 (Tex. 2012). Consequently, it reversed our judgment and remanded the cause directly to the trial court to resolve the fact issue. *Id.* The trial court conducted an evidentiary hearing on March 12, 2013 to determine whether M-CA owned an interest in any of the warehouse property sold by the ancillary receiver. The parties submitted a substantial amount of testimonial and documentary evidence on the contested fact issue. As we did in the prior opinion, we begin by identifying the parties and one non-party to the appeal. Five Star Holding Company, Inc. (Five Star) owns a 200,000 square foot warehouse located at 1390 Don Haskins Drive in El Paso, Texas (the El Paso Premises). It is a member of Five Star Holding Management, L.L.C. As will be discussed in more detail below, Five Star leased the El Paso Premises to M-CA in 1997 and it later transferred its interest in the lease to 1320/1390 Don Haskins, Ltd. Five Star Holding Management is the general partner of 1320/1390 Don Haskins. For convenience, we will refer to these parties collectively as Appellants except where it is necessary to identify them individually.[1]

---

[1] Unit 82 Joint Venture entered into a lease agreement with Mediacopy Texas, Inc. (MTI) for real property located on Rojas Drive in El Paso, Texas. It intervened in the ancillary receivership proceeding and filed a claim against

Robb Evans is the primary receiver appointed by a California Superior Court and is the ancillary receiver appointed by the trial court. M-CA and Mediacopy Texas, Inc. (MTI) are subsidiaries of Infodisc Global Holdings, Inc. (Infodisc). M-CA is not a party to the suit below or to this appeal. In 1997, M-CA, MTI, and Infodisc were in the business of replicating DVDs for movie studios and duplicating VHS videotapes.

On December 19, 1997, Five Star Holding Company (Five Star) entered into a "standard net industrial lease" with M-CA as tenant. The lease is for approximately 10.6 acres of land and a 200,000 square foot building to be constructed at 1280 Don Haskins in El Paso, Texas (the El Paso Premises).[2] According to the lease, Five Star was responsible for constructing the building. Five Star also entered into letter agreements to loan M-CA the sum of $485,000 for the purpose of constructing certain tenant improvements at 1280, 1290, and 1390 Don Haskins.

On January 8, 1998, MTI, not M-CA, entered into a "Tax Abatement Agreement" with the City of El Paso.[3] Under the Tax Abatement Agreement, the City of El Paso agreed to abate 50% of the assessed value of the 200,000 square foot building MTI proposed to construct at 1280 Don Haskins (referred to as Phase One)[4] and to abate 25% of the assessed value of eligible personal property to be installed by MTI in this city-designated reinvestment zone. In exchange, MTI agreed to construct improvements, install certain personal property, identified as operator workstations, office furniture, computer equipment, telephone equipment, office equipment, and distribution machines, and to create and maintain a minimum level of professional,

MTI for breach of the lease agreement. This cause of action appears to be unrelated to the other appellants' claims.

[2] The original lease stated the address of the premises as 1280 Don Haskins but the parties subsequently entered into an addendum which amended the lease to reflect the correct address as 1390 Don Haskins.

[3] The Property Redevelopment and Tax Abatement Act authorizes taxing units to create a reinvestment zone for commercial-industrial tax abatement purposes. TEX.TAX CODE ANN. § 312.001-.403 (West 2008 and Supp. 2014).

[4] As part of this same Tax Abatement Agreement, MTI also agreed to construct a 262,500 square foot building at 1290 Don Haskins which is referred to as Phase Two in the Tax Abatement Agreement.

administrative, and labor employment positions for a period of five years. Jerry Ayoub, on behalf of Five Star Holding Company, signed the Tax Abatement Agreement and thereby expressly consented to it.

On October 17, 2000, M-CA entered into a construction contract with F-Star Development, L.P., to construct, install, and complete tenant improvements at 1390 Don Haskins.[5] The record is not clear when construction was completed or the exact date when M-CA and MTI began operating the video replicating business at the El Paso Premises, but according to sworn documents filed by M-CA in the bankruptcy court in 2004, M-CA had ceased acting as an operating entity by 2001. From that point forward, its primary business was the leasing of property for its own benefit and for its affiliated corporate entities in the United States.

In August 2003, Infodisc and MTI entered into a credit agreement with the International Commercial Bank of China, Los Angeles Branch (ICBC) and two other banks, whereby the banks agreed to loan these two companies up to $30 million, $20 million of which would be used to repay existing indebtedness and the remainder would be used as working capital. MTI and Infodisc borrowed more than $16,000,000 and executed promissory notes and a security agreement which gave ICBC a security interest in tangible and intangible personal property, including all machinery, equipment, and fixtures located at borrowers' facilities.

Like many other American businesses, M-CA, Infodisc, and MTI experienced significant financial difficulties in 2003 and 2004. Infodisc and MTI defaulted on the credit agreement and promissory notes and ICBC filed suit on November 30, 2004, in the Superior Court of California, Los Angeles County, Los Angeles. The petition included a claim for breach of the credit

---

[5] The record reflects that Jerry Ayoub is the president of F-Star Management, L.L.C. which is the general partner of F-Star Development. As noted in our prior opinion, Ayoub is also the president of Five Star Holding Company, the manager of Five Star Holding Management, L.L.C., and an authorized representative of 1320/1390 Don Haskins, Ltd.

agreement and the promissory notes and sought to recover more than $12,895,000. ICBC also requested the appointment of a receiver. On January 13, 2005, the California Superior Court, with the agreement of MTI, Infodisc, and ICBC, entered a stipulated order appointing a receiver, Robb Evans, to liquidate MTI's assets. Because some of MTI's assets were located in El Paso, Texas, ICBC filed a verified petition and application for appointment of an ancillary receiver in the 327th District Court. The trial court entered a stipulated order on March 24, 2005 appointing Evans as the ancillary receiver. At about the same time, the California Superior Court approved Maynards Industries, Ltd. (Maynards) as the receiver's agent to liquidate the assets.

In 2004, M-CA became delinquent on the lease payments for the El Paso Premises and Appellants gave M-CA notice of intent to lockout M-CA from the premises. In response, M-CA filed a Chapter 11 bankruptcy petition on October 22, 2004. On November 5, 2004, M-CA filed its Schedules of Assets and Liabilities (Schedules) and Statement of Financial Affairs (SOFA). On Schedule B, M-CA listed all of its personal property. M-CA's personal property includes landlord security deposits for 1280 Don Haskins ($30,000) and 1390 Don Haskins ($30,750), and prepaid rent for 1390 Don Haskins ($66,909). Schedule B also includes a small amount of machinery, equipment, and supplies, some of which was leased. None of the property sold by the Ancillary Receiver in 2005 appears on Schedule B.

M-CA made statements in its bankruptcy filings which indicated it no longer operated out of the leased facilities in El Paso and its affiliates instead operated out of those facilities. For example, M-CA filed a motion in the bankruptcy court on December 21, 2004 seeking an extension of time in which to either assume or reject the lease for the El Paso Premises. M-CA supported the motion with the sworn declaration of its Chief Financial Officer, Paul Westphal, who stated: "[M-CA] itself primarily manages an office facility in Culver City, California and

- 5 -

manufacturing and warehousing facilities, utilized by its affiliates, in El Paso, Texas, for which it is the lessee." Westphal also stated that M-CA sought to extend the time within which to assume or reject the lease for the El Paso Premises because the property serves as M-CA's affiliates' main manufacturing and warehouse facility in Texas and the vast majority of the affiliates' inventory is stored on the premises. Westphal further represented that without the property, M-CA's affiliates could not operate their business.

M-CA also informed the bankruptcy court about the California suit against Infodisc and MTI and the receivership, and it disclosed that its affiliates were working with the receiver to liquidate assets owned by MTI. In its second status report filed on March 9, 2005 in the bankruptcy court, M-CA reported the following:

> 7. In the initial stages of this case, the Debtor undertook significant efforts to evaluate the feasibility of continuing both the Debtor and its affiliates as going concerns, and the feasibility of a sale of the assets of the Debtor and its affiliates as going concerns. However, during late January 2005, two of the Debtor's affiliates (Infodisc Global Holding, Inc. and Mediacopy Texas, Inc.) which are borrowers under a credit agreement with the International Commercial Bank of China ('ICBC') as agent, entered into a stipulation for the appointment of a State Court receiver (the 'Receiver') in an action filed by ICBC in the Superior Court for the County of Los Angeles.

> 8. The Debtor's affiliates have been working collaboratively with the Receiver and ICBC to sell assets and liquidate the business enterprises of Debtor's affiliates. Moreover, the Debtor has actively engaged in discussions and negotiations with its landlords to provide sufficient time in the leased facilities to enable the Debtor's affiliates, the Receiver, and ICBC time to facilitate such liquidation efforts. The Debtor has received post-petition funding through its affiliates to cover its lease and other costs.

M-CA filed a second motion seeking an extension of time in which to either assume or reject the lease for the El Paso Premises and it asked the bankruptcy court to extend the time until June 30, 2005. M-CA stated that the lease dated December 19, 1997 between Landlord and the Debtor, concerns the lease of certain property located at 1390 Don Haskins, El Paso, Texas

(the "1390 Property"). Further, the motion alleged that the 1390 Property is the site in which substantial equipment of M-CA's affiliates is located and MTI owned the equipment used in the manufacturing of DVDs and in the production of recordings on DVDs. The motion also echoed what M-CA had reported in its second status report, namely, that it was cooperating with MTI and the Receiver in arranging an auction of the equipment located at the 1390 Property. M-CA stated that the receiver Evans had completed detailed schedules of the manufacturing equipment, office computers and servers, and the manufacturing components (tape, polycarbonate cases, and media) held by MTI in order to arrange for the sale of these assets. It supported its motion with a declaration prepared by Evans and his detailed schedule of the MTI property he intended to sell. Evans stated in his declaration that upon his appointment as the primary receiver in the California case, he immediately undertook the task of marshalling the assets of the receivership estate and pursuing the steps necessary to collect and sell or liquidate the assets of MTI and he had completed detailed schedules of the manufacturing equipment, office computers and servers, and the manufacturing components held by MTI in order to arrange for the sale of these assets. Evans attached a true and correct copy of this inventory to his declaration.

Five Star Holding Company and 1320/1390 Don Haskins objected to the second extension motion on the grounds that M-CA did not own any assets and the property to be sold by the receiver was owned by M-CA's affiliates, not M-CA. As noted by ICBC in its brief, Five Star and 1320/1390 Don Haskins stated several times in the objection that MTI owned the property. The bankruptcy court granted M-CA's motion and extended the time until June 30, 2005.

The receiver's auction and private sale were scheduled to be held on June 15, 2005. On June 1, 2005, Appellants intervened in the receivership proceedings and asserted numerous third

party claims against MTI, ICBC, Evans, and Maynards. The trial court denied Appellants' request for a restraining order to prevent the private sale and public auction, and the receiver, through its agent, conducted the auction and sales. According to the receiver's report, a total of $7,573,896.46 was received from the liquidation of the assets of MTI through liquidation sales, auction sales, and inventory sales. The receiver vacated the El Paso Premises on July 27, 2005. On August 29, 2005, ICBC took a default judgment against MTI and Infodisc in the California case for damages in the amount of $13 million.

Following the hearing, the trial court entered an order concluding that there had been no violation of the automatic bankruptcy stay. At the request of the ancillary receiver, the trial court also entered an order confirming the ancillary receiver's final accounting, terminating the ancillary receivership, directing the ancillary receiver to transfer the remaining ancillary receivership to the receiver appointed in the California receivership, and discharging the ancillary receiver. The trial court entered written findings of fact and conclusions of law in support of both orders.

## DENIAL OF A JURY TRIAL

In Issue One, Appellants contend that the trial court erred by denying them a jury trial on the fact issue whether M-CA had an interest in any of the warehouse property sold by the ancillary receiver. As noted by ICBC, Evans, and Maynards, it has long been the rule in Texas that the right to trial by jury does not extend to receivership proceedings. *Henry v. Masson*, 333 S.W.3d 825, 848 (Tex.App.--Houston [1st Dist.] 2010, no pet.); *Bergeron v. Sessions*, 561 S.W.2d 551, 555 (Tex.Civ.App.--Dallas 1977, writ ref'd n.r.e.); *Moody v. State*, 538 S.W.2d 158, 161 (Tex.Civ.App.--Waco 1976, writ ref'd n.r.e.), *Ferguson v. Ferguson*, 210 S.W.2d 268, 269 (Tex.Civ.App.--Austin 1948, writ ref'd n.r.e.); *McHenry v. Bankers' Trust Co.*, 206 S.W. 560,

572 (Tex.Civ.App.--Galveston 1918, writ ref'd). Receivership property is in the custody of the law; consequently, its management and control rests exclusively in the court. *See Henry*, 333 S.W.3d at 848. Jury intervention would impermissibly transfer control and management of the receivership from the court to the jury. *Id.* The fact issues resolved by the trial court relate exclusively to whether M-CA had an interest in any of the receivership property, and as such, these facts issues do not pertain to any of Appellants' third party claims. Consequently, Appellants did not have a right to a jury trial on these fact issues. Issue One is overruled.

## TRIAL COURT'S ABILITY TO DETERMINE ITS JURISDICTION

In Issues Two and Nine, Appellants argue, in effect, that the trial court did not have jurisdiction to determine whether it had jurisdiction in the first place, and therefore, it "could not 'bootstrap' itself into having subject matter jurisdiction by making findings of fact and conclusions of law to create it." Appellants reason that the trial court lacked jurisdiction to enter either order challenged on appeal. Appellants do not cite any authority in support of their argument. It is fundamental that courts always have jurisdiction to determine their own jurisdiction. *Heckman v. Williamson County*, 369 S.W.3d 137, 146 n.14 (Tex. 2012); *Houston Municipal Employees Pension System v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007); *Harris County v. Sykes*, 136 S.W.3d 635, 642 (Tex. 2004). Issues Two and Nine are overruled.

## THE JURISDICTIONAL ORDER

In Issues Three through Eight, Appellants challenge the trial court's order determining that the ancillary receivership did not violate the bankruptcy stay. More specifically, Appellants argue that the evidence does not support Findings of Fact A through E and Conclusions of Law 1, 2, 4, and 5 are both unsupported by the evidence and erroneous.

*The Standard of Review*

The parties agree that the trial court's fact findings should be reviewed for legal and factual sufficiency of the evidence supporting those findings while the court's conclusions of law are subject to *de novo* review. A trial court's findings of fact in a bench trial have the same force and dignity as a jury's verdict and are reviewable for legal and factual sufficiency of the evidence under the same standards as applied in reviewing a jury's findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Boerschig v. Southwestern Holdings, Inc.*, 322 S.W.3d 752, 764 (Tex.App.--El Paso 2010, no pet.). In conducting a legal sufficiency review, we consider evidence in the light most favorable to the trial court's findings and indulge every reasonable inference that would support them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Boerschig*, 322 S.W.3d at 764. We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 827. We will sustain a legal-sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

When reviewing the factual sufficiency of the evidence to support the trial court's fact finding, we consider and weigh all of the evidence and will "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In conducting our review under both the legal and factual sufficiency standards, we are mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony, and that it is within the trier of

fact's exclusive province to resolve any conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819.

An appellate court reviews a trial court's conclusions of law as legal questions; consequently, a conclusion of law is reviewed under the *de novo* standard. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law may not be challenged for sufficiency of the evidence, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.* If an appellate court determines that a conclusion of law is erroneous, but it also finds the trial court rendered the proper judgment, the incorrect conclusion of law does not require reversal and the appellate court must sustain the judgment on any legal theory supported by the evidence. *Id.*

*The Trial Court's Fact Findings*

The trial court made the following findings of fact:

A. None of the property of the receivership estate created upon the appointment of Receiver in this action and none of the property thereafter sold by the Receiver pursuant to the orders of this Court constituted property of the estate ('Bankruptcy Estate Property') in the bankruptcy case then pending in the United States Bankruptcy Court for the Central District of California ('Bankruptcy Court') captioned *In re Mediacopy, a California corporation*, Case No. LA-04-32508 SB (U.S. Bankr. Ct., C.D. Cal.) ('Bankruptcy Case').

B. The debtor ("California Debtor") in the Bankruptcy Case consented to the filing of the Ancillary Petition, to the use by the Receiver of the premises at issue in this action ("Subject Premises") and to the on-site auction sales by the Receiver authorized by the orders of this Court.

C. Before the filing of the Verified Petition and Application for Appointment of Ancillary Receiver (the 'Ancillary Petition') that commenced this action, the Bankruptcy Court and the relevant parties in interest in the Bankruptcy Case -- including the Intervenors -- were notified in writing by the California Debtor that the California Debtor had consented to the appointment of the Receiver, to the use and occupancy by the Receiver of the premises that are at issue in this action ('Subject Premises') and to the on-site auction sales of the property at issue in this action ('Subject Property') that the Receiver then intended to conduct and eventually conducted; and neither the Bankruptcy Court nor any

- 11 -

party in interest -- including the Intervenors -- objected to such appointment, use, occupancy or on-site auction sales on the ground that any of those activities constituted or would constitute a violation of the automatic stay.

D. After having been notified in writing that the California Debtor had consented to the appointment of the Receiver, to the use and occupancy by the Receiver of the Subject Premises and to the on-site auction sales of the Subject Property that the Receiver then intended to conduct and eventually conducted, the Bankruptcy Court entered an order pursuant to 11 U.S.C. § 365 extending by six months the deadline by which the California Debtor would be required to assume or reject the lease by the California Debtor of the Subject Premises and the Bankruptcy Court did so in order to facilitate the Receiver's use, occupancy and planned on-site auction sales.

E. Neither the filing of the Ancillary Petition, any order issued by this Court nor any of the activities of the Receiver in connection with the Subject Premises or Subject Property constituted an act to obtain possession or control of, or constituted an act to create or enforce any lien against, any Bankruptcy Estate Property; nor did any such act affect Bankruptcy Estate Property.

*The Trial Court's Conclusions of Law*

Appellants challenge only five of the trial court's eight conclusions of law. Conclusion of law 1 is the same as Finding of Fact E. Conclusions of law 2, 4, and 5 are as follows:

2. The property sold by the Receiver was not Bankruptcy Estate Property.

.     .     .

4. The Receiver's use and occupancy of the Subject Premises did not constitute a violation of the automatic stay because such use and occupancy was consented to by the California Debtor and, under either or both of 11 U.S.C. § 363(b) or 11 U.S.C. § 363(c) was a proper use of Bankruptcy Estate Property.

5. Even if, for the sake of argument, the Debtor's consent to the receivership proceedings in this (or in the related California receivership case) were to have effected a sale or use of any Bankruptcy Estate Property that was not authorized by the Bankruptcy Code or the Bankruptcy Court, such sale or use would not have constituted a violation of the automatic stay because the California Debtor consented to the Receiver's use of the Subject Premises and to the Receiver's sale of the property located in or at the Subject Premises. [Citation omitted].

- 12 -

*Analysis*

The critical fact question before the trial court was whether M-CA owned an interest in any of the property sold by the ancillary receiver. Appellees presented evidence showing that MTI, not M-CA, owned the property sold by the ancillary receiver.

Appellants argue that the evidence is insufficient to support the trial court's findings because MTI was never a party to the December 19, 1997 lease for the El Paso Premises and M-CA never assigned or sub-let the lease to MTI. The trial court correctly concluded that the mere fact that M-CA was the tenant named in the lease does not necessarily lead to the conclusion that it owned any tangible personal property or fixtures located in the El Paso Premises.[6] M-CA's status as the named tenant does not control the fact question before the trial court.

Appellants focus much of their argument on various provisions of the December 19, 1997 lease. Paragraph 6 of the lease provided that M-CA would occupy and use the El Paso Premises exclusively for its light manufacturing business. Paragraph 20 of the lease prohibited M-CA from assigning or subletting the lease unless it first obtained Landlord's consent and written permission. The evidence showed, however, that M-CA had by 2001 ceased its operating activities and MTI and Infodisc conducted the manufacturing operations in the El Paso Premises. These provisions do not prohibit M-CA from permitting its affiliates from using the premises. Even if these provisions could be construed as prohibiting M-CA from permitting MTI and Infodisc from using the El Paso Premises, M-CA's actions might be construed as a breach of the lease but these provisions do not control the determination whether M-CA owned an interest in the property sold by the ancillary receiver.

Appellants also direct our attention to Section 26 of the December 19, 1997 lease which addresses surrender, holding over, and successors. This provision states that upon the

---

[6] Appellants did not challenge this conclusion of law.

termination of M-CA's right to possession of the El Paso Premises, it would surrender the premises and remove all of its inventory, personal property, and trade fixtures, and any trade fixtures or tenant improvements not so removed by M-CA would be deemed abandoned, and all tenant improvements would remain in the premises as the property of landlord. Relying on this provision, Appellants reason that "at all times pertinent to this case, the trade fixtures and tenant improvements in the premises were the property of either M-CA or Landlord." This assertion is erroneous because M-CA's right to possession of the El Paso Premises was not terminated. The ancillary receivership order entered by the trial court effected a voluntary transfer of M-CA's right of possession to the ancillary receiver. Thus, Section 26 of the lease is inapplicable.

Appellants next argue that the ancillary receiver's inventory shows that all of the listed property belonged to M-CA, not MTI. Appellants are correct that the heading on the ancillary receiver's inventory states "Media Copy Inc." Appellants suggest that this heading necessarily refers to M-CA, but neither M-CA nor MTI is known as "Media Copy Inc." The heading is confusing when read in isolation from the remainder of the document, but the ancillary receiver clearly states in his sworn declaration that he had created an inventory of the manufacturing equipment, office computers and servers, and the manufacturing components held by "Mediacopy Texas" in order to arrange for the sale of these assets, and Exhibit A appended to his declaration is a true and correct copy of the inventory he had created for this purpose. The trial court could have reasonably concluded that the ancillary receiver's inventory sets forth the property of MTI, not M-CA.

Having reviewed the evidence in the light most favorable to the trial court's fact finding, we conclude that the evidence is legally sufficient to support the court's finding that M-CA did not have an interest in any of the property sold by the ancillary receiver. We have also reviewed

the evidence related to this same finding under the factual sufficiency standard and conclude that it is not contrary to the overwhelming weight of the evidence. Given that M-CA did not have an interest in any of the property sold by the ancillary receiver, the trial court correctly concluded that the property sold by the ancillary receiver was not bankruptcy estate property and the ancillary receivership did not violate the automatic stay of the California bankruptcy case involving M-CA. Issues Three, Four, Seven, and Eight are overruled. It is unnecessary to address Issues Five and Six which pertain to the trial court's determination that M-CA consented to the appointment of the ancillary receiver and to the ancillary receivership.

## THE TERMINATION ORDER

In Issues Ten and Eleven, Appellants challenge the trial court's order terminating the ancillary receivership and discharging the receiver. They contend that the termination order should be vacated because the ancillary receivership expired by statute on March 24, 2013.

### *The Standard of Review*

The appointment or termination of a receivership is within the sound discretion of the appointing court. *Gilles v. Yarbrough*, 224 S.W.2d 720, 722 (Tex.Civ.App.--Fort Worth 1949, no writ). Consequently, a trial court's decision to terminate a receivership is reviewed under the abuse of discretion standard. *CitiMortgage, Inc. v. Hubener*, 345 S.W.3d 193, 195-96 (Tex.App.--Dallas 2011, no pet.). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, such that its ruling was arbitrary or unreasonable. *Id.*, 345 S.W.3d at 196, *citing Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

*Order Extending the Receivership*

In Issue Ten, Appellants argue that the termination order should be vacated because the receivership it terminated had expired by operation of law. Further, Appellants assert that the evidence does not support the trial court's finding of fact that the order appointing the ancillary receiver was signed on March 24, 2005 and this receivership expired by statute on March 24, 2013. Appellants also challenge the trial court's conclusion of law that the receivership was extended but expired on March 24, 2013.

Appellants contend that the receivership expired by operation of law on March 24, 2008 because the ancillary receiver did not file his application to extend the receivership until January 14, 2009. Section 64.072 of the Civil Practice and Remedies Code provides that, except as permitted by the statute, a court may not administer a corporation in receivership for more than three years after the date the receiver is appointed, and the court shall wind up the affairs of the corporation within that period. TEX.CIV.PRAC.&REM.CODE ANN. § 64.072(a)(West Supp. 2014). Subsection (b) authorizes a court to extend the duration of a corporate receivership if: (1) litigation prevents the court from winding up the affairs of the corporation within three years; or (2) the receiver is operating the corporation as a going concern. TEX.CIV.PRAC.&REM.CODE ANN. § 64.072(b). A court is authorized to extend the receivership for an additional five years. TEX.CIV.PRAC.&REM.CODE ANN. § 64.072(d). On January 14, 2009, the ancillary receiver filed an application to extend the receivership pursuant to § 64.072(b)(1) because ongoing litigation prevented the court from winding up the affairs of MTI. The trial court granted the application on February 18, 2009 and extended the ancillary receivership until the litigation was concluded or for an additional eight years whichever occurred first.

In *Bayoud v. Bayoud*, 797 S.W.2d 304, 309 (Tex.App.--Dallas 1990, writ denied), a receivership of a corporation continued for more than three years and the record did not include an application by the receiver to extend the receivership or an order granting the application. The Dallas Court of Appeals held that the provisions of Section 64.072 requiring an application for extension, notice to the parties, and a hearing on the matter are procedural in nature and judgments rendered without observance of statutory requirements which are purely procedural are not void, and are instead, merely voidable. *Id.* The court of appeals concluded that the appellants had waived any error because they failed to object when the receivership expired that the requirements of Section 64.072 had not been met. *Id.*

In the instant case, the record does not reflect that Appellants objected in 2008 when the ancillary receivership expired and they did not object when the ancillary receiver filed his application to extend the receivership. Further, the trial court's order granting the application recited that all attorneys of record were provided with notice of the hearing on the application to extend the duration of the ancillary receivership and "[n]o responses . . . were filed." Appellants' objection to the extension of the receivership raised for the first time on appeal is untimely. *Bayoud*, 797 S.W.2d at 309. Further, even if the duration of the receivership had expired, the trial court had jurisdiction to wind up the receivership and discharge the receiver. *Bayoud*, 797 S.W.2d at 310; *Humble Exploration Company, Inc. v. Walker*, 641 S.W.2d 941, 945 (Tex.App.-- Dallas 1982, no writ). Issue Ten is overruled.

### *No Record of the Hearing*

In their final issue, Appellants argue that the evidence is insufficient to support three findings of fact made by the trial court in connection with the termination order. The trial court found as follows:

1. The Ancillary Receiver has discharged the duties imposed by the Order Appointing Ancillary Receiver and the subsequent orders of this Court except for the final distribution of the funds from the assets liquidated through the ancillary receivership.

2. There were no objections made to any periodic reports prepared by the ancillary receiver within ten (10) days of providing the periodic reports as set forth in the Order Appointing Ancillary Receiver.

3. The Ancillary Receiver's final accounting and report of administration was presented and confirmed by the court including approval of all unpaid expenses of the ancillary receivership through the date of the March 14, 2013 hearing. The Court overruled all objections presented by Intervenors.

The record before us does not include the reporter's record of the hearing conducted by the trial court on March 14, 2013 on the ancillary receiver's motion to confirm his final accounting and terminate the receivership. Generally, in an appeal with only a partial reporter's record, we must presume the omitted portions of the record are relevant and support the trial court's judgment. *Feldman v. Marks*, 960 S.W.2d 613, 614 (Tex. 1996); *Sedona Pacific Housing Partnership v. Ventura*, 408 S.W.3d 507, 514 (Tex.App.--El Paso 2013, no pet.). An exception to the general rule is set forth in Texas Rule of Appellate Procedure 34.6(c), but Appellants did not comply with the requirements of this rule. *See* TEX.R.APP.P. 34.6(c). Consequently, we will apply the general presumption that the missing portions of the record support the challenged fact findings and the termination order. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2003); *Sedona Pacific*, 408 S.W.3d at 515. Issue Eleven is overruled. Having overruled each issue presented on appeal, we affirm the judgment of the trial court.

November 5, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)