

# NUMBER 13-20-00002-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**CC FROST PROPERTIES, LTD.,**                                          **Appellant,**

**v.**

**BRETT BIRKELAND AND MSCI
2007–IQ16 NORTH CARANCAHUA
STREET, LLC,**                                                             **Appellees.**

### On appeal from the 28th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Silva**

We handed down our memorandum opinion and judgment in this cause on April 15, 2021. *See CC Frost Properties, Ltd. v. Birkeland*, No. 13-20-00002-CV, 2021 WL 1418240 (Tex. App.—Corpus Christi–Edinburg April 15, 2021, no pet. h.) (mem. op.).

Appellant CC Frost Properties, Ltd. (CC Frost) filed an amended motion for rehearing wherein they requested we withdraw our opinion and reverse the trial court's judgment and render judgment in its favor or remand for further proceedings. Among the issues raised, appellant contends that it did not waive its constitutional argument that "[t]axation shall be equal and uniform." TEX. CONST. art. 8, § 1(a). We deny appellant's amended motion for rehearing; however, we withdraw our April 15, 2021 memorandum opinion and judgment and we substitute the following memorandum opinion and accompanying judgment in their place.

Appellant appeals the trial court's order discharging appellee Brett Birkeland, the court-appointed receiver of Frost Bank Plaza on behalf of appellee MSCI 2007–IQ16 North Carancahua Street, LLC (MSCI). By four issues, CC Frost argues (1) the trial court erred by misconstruing its order appointing a receiver by determining the order did not require the receiver to pay the franchise tax; (2) the trial court's ruling that Birkeland was not responsible for the franchise tax as receiver violates Texas Administrative Code § 3.584(c)(11); (3) the trial court's ruling that Birkeland was not responsible for the franchise tax as receiver violates Texas Rule of Civil Procedure 39 by adjudicating the interest of the State of Texas; and (4) the trial court's ruling that Birkeland was not responsible for the franchise tax as receiver violates the Texas Constitution, article 8, § 1(a) by applying taxation unequally between two entities of the same taxable class. We affirm.

## I.  BACKGROUND

On April 10, 2018, MSCI filed a verified original petition and emergency application for appointment of receiver, alleging CC Frost had defaulted on a loan held by MSCI and

secured by real property known as Frost Bank Plaza. The trial court signed the order appointing Birkeland as the receiver of Frost Bank Plaza on the same day. The order authorized Birkeland, in part, "[t]o take possession of and operate the [p]roperty . . . ." The order further directed Birkeland:

> To apply the leases, rents, issues, profits, and revenues of the Property (i) first to the expenses, costs, and compensation, including reasonable attorneys' fees, of the Receiver, ProEquity and the Lender, and agents and employees of each thereof and/or in accordance with Section 64.051 of the Texas Civil Practice and Remedies Code[1]; (ii) next to the operating expenses of the Property, which shall include only reasonable and necessary expenses of operating the Property, *including taxes*, utilities, insurance, maintenance and repair costs (including immediate repair of potential life or safety risks), office expenses, and salaries of on-site personnel; and (iii) then to unpaid installments of indebtedness secured by the Deed of Trust;

(Emphasis added). In addition, the order directed Birkeland:

> To pay all appropriate real estate taxes, personal property taxes, or other taxes or assessments against the Property and take any and all action necessary and helpful to contest the valuation of the Property for real property tax purposes during the pendency of the receivership. *Receiver shall have no responsibility for tax filings and payments regarding Borrower's federal and/or state income taxes, sales and use taxes or payroll taxes* or other matters related to Borrower's employees . . . .

(Emphasis added).

On July 12, 2018, the trial court signed an order on receiver's motion for consent to sell property, permitting Birkeland to enter into a contract to sell Frost Bank Plaza. On September 27, 2019, Birkeland filed a motion to approve his final report, terminate the receivership, authorize compensation for attorneys' fees, authorize final distribution, release of the bond, and discharge him as receiver. CC Frost objected to Birkeland's

---

[1] Section 64.051 sets out the order in which a receiver shall apply the earnings of property held in receivership but does not address taxes. TEX. CIV. PRAC. & REM. CODE ANN. § 64.051.

motion, asserting that Birkeland was responsible for the unpaid franchise tax associated with the profit from the sale of the property in the amount of $26,281.90.[2]

Birkeland responded to CC Frost's objection by asserting that the franchise tax attributable to the sale of the property is not a tax against the property but rather a tax against CC Frost as an entity. Birkeland also notified the court that he paid the franchise tax amount attributable to the rental income from the property.

After a hearing, the trial court signed an order discharging Birkeland as receiver, approving Birkeland's final accounting, and granting his requests for attorneys' fees, without ordering Birkeland, as receiver, to pay the outstanding franchise tax. This appeal followed.

## II.    PAYMENT OF FRANCHISE TAX

By its first issue, CC Frost argues the trial court unreasonably interpreted its own April 10, 2018 order appointing a receiver. Specifically, CC Frost asserts that the order required Birkeland to pay all "appropriate real estate taxes, personal property taxes, or other taxes or assessments against the property[,]" thus requiring Birkeland to pay the franchise tax attributable to the sale of the property. By its second issue, CC Frost argues the trial court erred when it discharged Birkeland as receiver without requiring Birkeland to pay all the Texas franchise tax out of the proceeds of the sale of the property, in contravention of Title 34, § 3.584(c)(11) of the Texas Administrative Code. 34 TEX. ADMIN. CODE ANN. § 3.584(c)(11). Because the analysis for each issue overlaps, we consider them together.

---

[2] The total amount of the franchise tax assessed against CC Frost was $39,128.54, but Birkeland had paid $12,846.64 that was attributed to the rental income of Frost Bank Plaza.

4

**A.      Standard of Review and Applicable Law**

**1.      Discharge of Receiver**

The decision to appoint or terminate a receiver is reviewed under an abuse of discretion standard. *CitiMortgage, Inc. v. Hubener*, 345 S.W.3d 193, 195 (Tex. App.—Dallas, 2011, no pet.); *Unit 82 Joint Venture v. Int'l Com. Bank of China, L.A. Branch*, 460 S.W.3d 616, 627 (Tex. App.—El Paso 2014, pet. denied); *see also Huffmeyer v. Mann*, 49 S.W.3d 554, 559 (Tex. App.—Corpus Christi–Edinburg 2001 no pet.). "To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, such that its ruling was arbitrary or unreasonable." *Unit 82*, 460 S.W.3d at 627. Rules of construction that direct courts to apply reasonable construction of contracts and like instruments may be applied to orders of courts as well. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 405 (Tex. 1971).

A court "may appoint a receiver in an action by a creditor to subject any property or fund to his claim." TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(a)(2). Unless otherwise stated, "the rules of equity govern all matters relating to the appointment, powers, duties, and liabilities of a receiver and to the powers of a court regarding a receiver." *Id.* § 64.004. "Receivership property is in the custody of the law; consequently, its management and control rests exclusively in the court." *Unit 82*, 460 S.W.3d at 623 (citing *Henry v. Masson*, 333 S.W.3d 825, 848 (Tex. App.—Houston [1st Dist.] 2010, no pet.)); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 64.031.

The Texas margin tax, also known as franchise tax, is a tax that is "imposed on each taxable entity that does business in this state or that is chartered or organized in this state." TEX. TAX. CODE ANN. § 171.001. "'Taxable entity' means a partnership, limited

liability partnership, corporation, banking corporation, savings and loan association, limited liability company, business trust, professional association, business association, joint venture, joint stock company, holding company, or other legal entity." *Id.* § 171.0002(a).[3] "Taxable entity" also explicitly excludes some entities, such as a sole proprietorship. *Id.* § 171.0002(b).

### 2. 34 TEX. ADMIN. CODE ANN § 3.584(c)(11)

Questions of statutory interpretation are reviewed de novo. *In re C.Y.K.S.*, 549 S.W.3d 588, 591 (Tex. 2018) (per curiam); *Pisharodi v. Colombia Valley Healthcare Sys., L.P.*, No. 13-18-00364-CV, ___ S.W.3d ___, ___, 2020 WL 2213951, at *7 (Tex. App.— Corpus Christi–Edinburg May 7, 2020, no pet.). "When interpreting a statute, our primary objective is to ascertain and give effect to the [l]egislature's intent without unduly restricting or expanding the Act's scope." *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). "[I]f a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866–67 (Tex. 1999). "If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *Id.* "We presume that the [l]egislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."

---

[3] A similar definition relevant to this analysis may be found in the Texas Administrative Code. *See* 34 TEX. ADMIN. CODE ANN. § 3.581.

*Id.* When interpreting a statute, "we look at the entire act, and not a single section in isolation." *Fitzgerald*, 996 S.W.2d at 866.

If an entity is in receivership, it is the responsibility of the receiver to file and pay the franchise tax of the taxable entity in receivership. 34 TEX. ADMIN. CODE ANN. § 3.584(c)(11). As discussed *supra*, taxable entity includes "a partnership, limited liability partnership, corporation, banking corporation, savings and loan association, limited liability company, business trust, professional association, business association, joint venture, joint stock company, holding company, or other legal entity." TEX. TAX CODE ANN. § 171.0002(a); *see also* 34 TEX. ADMIN. CODE ANN. § 3.581. The franchise tax is a tax against a taxable entity. TEX. TAX CODE ANN. § 171.001.

## B.    Analysis

In support of its argument, CC Frost points our attention to the trial court's order appointing a receiver which directed Birkeland to pay operating costs of the property "*including taxes.*" The order further directed Birkeland to pay all "appropriate real estate taxes, personal property taxes, or other taxes or assessments against the [p]roperty." CC Frost concedes, however, that the order also directed CC Frost to pay "federal and/or state income taxes, sales and use taxes or payroll taxes or other matters related to [CC Frost's] employees . . . ." According to CC Frost, because the trial court did not order CC Frost to pay the franchise tax, the responsibility to pay it thus lies with Birkeland as receiver. CC Frost acknowledges that the trial court's order appointing a receiver does not address franchise taxes by name, but instead fits in the class of taxes Birkeland was ordered to pay. CC Frost also argues that the franchise tax is an operating expense because Birkeland's operations included selling the property.

7

CC Frost asserts that it is not responsible for the franchise tax because it is not an income tax, citing *Graphic Packaging Corp. v. Hegar*, 538 S.W.3d 89, 94 (Tex. 2017). Despite CC Frost's assertions, in *Hegar,* the Court explicitly refused to decide whether the franchise tax constitutes an income tax. *Id.* at 95 ("Even were we to agree with [Petitioner] that its franchise tax . . . amounted to the same thing as [Texas Tax Code] chapter 141's income tax (an issue we do not decide) . . . ."). The court also noted that the legislature claiming the franchise tax is not an income tax does not necessarily make it so. *Id.* at 94 (referring to Act of May 2, 2006, 79th Leg., 3d C.S., ch.1, § 21, 2006 Tex. Gen. Laws 1, 38, wherein the legislature stated the franchise tax is not an income tax).

However, we do not need to decide whether the franchise tax is an income tax because we conclude the franchise tax is a tax against CC Frost, not against the Frost Bank Plaza. *See* TEX. TAX CODE ANN. § 171.001. Birkeland was the appointed receiver for Frost Blank Plaza, the property, not CC Frost, the entity. As such, the trial court's order appointing Birkeland only required him to pay "appropriate real estate taxes, personal property taxes, or other taxes or assessments *against the property*" as well as "reasonable and necessary expenses of *operating the property*." (Emphasis added). For the purposes of this receivership, it cannot be said that the franchise tax is an operating cost or a tax or assessment against the property.[4] We also decline to interpret the order appointing Birkeland as receiver of the property as absolving CC Frost of all responsibilities of the entity, except those directed to be assumed by it. The trial court's order merely clarified that Birkeland was not responsible for CC Frost's income, sales and

---

[4] If the Frost Bank Plaza were owned and operated by a sole proprietorship, the franchise tax would not apply. *See* TEX. TAX CODE ANN. § 171.0002(b).

use taxes, payroll taxes or other matters related to CC Frost's employees. Further, the franchise tax cannot be an operating expense of the receiver, as CC Frost argues, because a receiver is not a taxable entity.[5] *See id.* § 171.0002(a).

CC Frost argues that by virtue of being the receiver for the property, Birkeland was operating as receiver for CC Frost as an entity for the purposes of § 3.584(c)(11). However, the receivership was born out of contract between CC Frost and MSCI that allowed MSCI to place the *property*, Frost Bank Plaza, into receivership should CC Frost default on the note, not to place CC Frost, the entity, into receivership. *See Zachary Const. Corp. v. Port of Hous. Auth. of Harris Cnty.*, 449 S.W.3d 98, 117 (Tex. 2014) ("As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy.") Further, the trial court's order appointing a receiver did not appoint a receiver for CC Frost but for the property. Section 3.584(c)(11) unambiguously applies to entities that are placed into receivership, not entities' property. *See* 34 TEX. ADMIN. CODE ANN. § 3.584(c)(11). Requiring Birkeland to pay CC Frost's franchise tax would necessarily reduce MSCI's reimbursement based on CC Frost's calculated profits.[6]

According to CC Frost, the phrase "taxable entity in receivership" found in § 3.584(c)(11) simply "means that a receiver has or controls that entity's property." If we were to apply that interpretation to a situation in which an entity owned and operated multiple commercial properties, and only one of those properties were placed into

---

[5] We express no opinion on whether or not Birkeland was required to pay the franchise tax attributable to the rental income of Frost Bank Plaza.

[6] Although there is more than one method to calculating an entity's franchise tax, in each method the amount of taxes calculated increases as the entity's profit increases. *See* TEX. TAX. CODE ANN. § 171.101.

receivership, it would be inequitable to require the receiver to pay the entity's entire franchise tax. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.004 (requiring rules of equity to apply to receivership). Such interpretation would create ambiguity where there is none. *See Combs*, 340 S.W.3d at 439; 34. Additionally, the legislature contemplated entities as a whole being placed into receivership. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(a)(5); *id.* §§ 64.071–.076.

Because § 3.584(c)(11) unambiguously applies to entities in receivership, we are bound by the legislature's selection of such phrase. *See Combs*, 340 S.W.3d at 439; 34 TEX ADMIN. CODE ANN. § 3.584(c)(11). We conclude that the trial court reasonably construed and applied its order appointing Birkeland as receiver. *See Fair*, 467 S.W.2d at 405. *See Unit 82*, 460 S.W.3d at 623. The trial court did not abuse its discretion when it discharged Birkeland as the receiver without requiring Birkeland to pay CC Frost's franchise tax. *See id.* at 627. Accordingly, CC Frost's first and second issues are overruled.

### III.   NECESSARY PARTY

CC Frost's third issue assert that the trial court violated Texas Rule of Civil Procedure 39. *See* TEX. R. CIV. P. 39.

An appellant's argument "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "However, briefs must also 'be liberally, but reasonably, construed so that the right to appeal is not lost by waiver.'" *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 731 (Tex. 2020) (per curiam) (quoting *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam)). When determining whether a matter has been

10

adequately briefed, we are instructed "to look not simply at the wording of the parties' issues, but also the arguments, evidence, and citations relied on . . . ." *Id.* at 731. Failure to adequately brief an issue may result in waiver of the complaint. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018); *see also H&H Sand & Gravel Inc. v. Suntide Sandpit, Inc.*, No. 13-17-00510-CV, 2019 WL 2293585, *7 (Tex. App.—Corpus Christi–Edinburg, May 30, 2019, pet. denied) (mem. op.).

CC Frost specifically asserts that the trial court's order violated Texas Rule of Civil Procedure 39 by adjudicating a right belonging to the State of Texas, i.e., tax obligations of a party, without the State of Texas via the Texas Comptroller of Public Accounts being joined as a necessary party. *See* TEX. R. CIV. P. 39 (requiring joinder of necessary parties). Beyond asserting that the Comptroller is a necessary party, CC Frost provides no such authority supporting the claim. *See* TEX. R. APP. P. 38.1(i); *RSL Funding*, 569 S.W.3d at 126. CC Frost's argument is limited to the following:

> [B]y necessary implication the [c]ourt has adjudicated a matter in which the Texas Comptroller of Public Accounts and the State of Texas have an interest (who should pay the [franchise] tax, and whether it should remain unpaid by the person who enjoyed the revenue stream giving rise to it). Accordingly, given its ruling which adjudicates the Receiver and Lender's liability for the [franchise tax], the Texas Comptroller of Public Accounts and the State of Texas is a necessary party under TEX. R. CIV. P. 39.

Accordingly, CC Frost's third issue is overruled.

### IV.    EQUAL AND UNIFORM TAXATION

By CC Frost's fourth issue, it asserts that the trial court's order is unconstitutional because the order provides that MSCI "should pay no [franchise tax] on the substantial revenue it received, whereas CC Frost . . . should pay [franchise tax] on revenue it did not receive," thus violating article 8, section 1(a) of the Texas Constitution. TEX. CONST.

11

art. 8, § 1(a) (requiring "[t]axation shall be equal and uniform"). However, CC Frost mischaracterizes the trial court's order and corresponding facts. The trial court did not hold that MSCI is not required to file and pay its own franchise tax or that the revenue it received through the receivership is not subject to franchise tax. *See* TEX. TAX. CODE ANN. §§ 171.001, 171.0001(a). Rather, the trial court held that Birkeland was not required to pay CC Frost's franchise tax out of the proceeds of the sale of Frost Bank Plaza that CC Frost owed to MSCI as a debt. CC Frost also misstates the facts when it claims it "did not enjoy any revenue from April 10, 2018 forward." Contrary to appellant's characterization, CC Frost enjoyed the revenue from April 10, 2018, vis-à-vis the revenue being applied to debt CC Frost owed to MSCI. Because CC Frost's fourth issue relies on facts that are not found in the record, we overrule the issue.

## V.   CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
27th day of May, 2021.

12